S. F. Bowser & Company, Incorporated, *vs.* Independent Dye House, Inc.

Suffolk. May 18, 1931. — June 30, 1931.

Present: Crosby, Pierce, Carroll, Wait, & Field, JJ.

*Contract*, Construction, In writing, Performance and breach. *Sale*, Warranty. *Sales Act*. *Practice, Civil*, Ordering verdict. *Evidence*, Presumptions and burden of proof, Competency.

At the trial of an action for a balance alleged to be due on the purchase price called for by a contract in writing whereby the plaintiff agreed to furnish and instal in the plant of the defendant "1 Complete continuous white solvent circulating system for 8 washers," it appeared that the contract price was not paid in full, and the defendant denied that the plaintiff had furnished what the contract called for. The defendant introduced testimony of witnesses of experience that, in order to get "white solvent," it was necessary with the system, furnished to the defendant by the plaintiff, "to take certain 'batches' of solvent from time to time out of the solvent then circulating in the other parts of the system and purify it to a water white color, and during the time said batch is being purified, the remaining solvent then circulating through the system may or may not be so purified as to be water white"; and that therefore in their opinions the system was not a "continuous white solvent circulating system." Witnesses for the plaintiff testified that the plaintiff had performed the contract because the "practices in the dry cleaning industry did not call for, and manufacturers did not make, systems which produced water white solvent as an automatic part of the operation, but only by purifying certain parts of the solvent from time to time in 'batches' according to the wishes and requirements of the owner of the particular system." The judge ordered a verdict for the plaintiff. *Held*, that

(1) The facts were in dispute and there was evidence warranting a finding for the defendant.

(2) The verdict for the plaintiff should not have been ordered.

The parties to a contract for the sale of goods may stipulate expressly that the contract covers all agreements between them, and such a stipulation, when made, in the absence of fraud should be held to prevent

an implied term being read into the contract under G. L. c. 106, § 17 (1), as well as any special agreement between the parties which is outside the terms of the contract in writing.

The contract in writing above described contained provisions "That this order shall not be countermanded; that it covers all agreements between parties hereto relative to this transaction, and that . . . [the plaintiff] shall not be bound by any representation or promise made by any agent relative to this transaction which is not embodied herein. . . . That the responsibility of . . . [the plaintiff] for loss or damage from any cause, is limited to the repairing or replacing of defective material and workmanship, manufactured by" him. *Held*, that

(1) Such provisions were inconsistent with the implied warranty described in cl. (1) of G. L. c. 106, § 17, and prevented the raising of such implication under cl. (6);

(2) Evidence that the defendant made known to and informed the plaintiff of the particular purpose for which it required the system, and relied upon the plaintiff's experience, skill and judgment to supply a system adequate, suitable and proper to such purpose and conditions, properly was excluded.

CONTRACT, against Independent Dye House, Inc., with a declaration in three counts, the first count seeking recovery of a balance, alleged to be due, of the purchase price of "1 Complete continuous white solvent circulating system for 8 washers," according to the contract in writing described in the opinion; the second count seeking recovery in *quantum meruit* for the services and expenses of the plaintiff's chief engineer, who spent considerable time in Boston in an attempt to ascertain the cause of the appearance of yellow spots on articles of clothing which had been cleansed at the defendant's plant; and the third count seeking recovery for various charges for labor and material in servicing the system after its installation was completed. Writ dated June 22, 1928.

In the Superior Court, the action was tried before *Gibbs*, J. Material evidence is described in the opinion.

At the close of the evidence, the judge allowed a motion by the plaintiff that a verdict be ordered in its favor on the first count, and submitted the second and third counts to the jury, who found for the defendant thereon. The judge then reported the action for determination by this court stating that the only issues involved in the report related to the cause of action under the first count. The

verdict for the plaintiff on the first count was in the sum of $6,440.

*R. P. Boruchoff*, for the defendant.

*M. C. Taylor*, for the plaintiff.

PIERCE, J.   This is an action of contract wherein the plaintiff, a manufacturer of many years' experience of systems or installations for the clarification of the solvent used in dry cleaning establishments, entered into a written contract with the defendant for the furnishing and installation by the plaintiff in the plant of the defendant of "1 Complete continuous white solvent circulating system for 8 washers, as shown on B Print E–6314." It was "agreed" at the trial "that the contract may be regarded as amended or modified by mutual agreement by substituting 'blueprint 6358' for 'blueprint 6314,' and no point is made of a variance, the pleadings [so] being treated for the purposes of the trial and of this report . . . ." The plaintiff in the first count of its declaration seeks to recover the unpaid balance of the contract price. The jury found for the defendant upon the second and third counts of the declaration and no issue arising during the trial of either of these counts is before this court.

The answer of the defendant to the first count "admits it made with the plaintiff the contract substantially as alleged in the declaration"; and "admits also the payment by it to the plaintiff as alleged in said first count," but "denies that the plaintiff has fully performed its contract." Passing further answer of the defendant which alleged facts in the nature of recoupment and which might be a possible basis of a cross action for damages, the defendant answered "that it made known to, and informed the plaintiff of the particular purpose for which it required the equipment, in question, to wit, for eight washers, shown to and described to the plaintiff; twelve to eighteen hours being required for washing. And the defendant relied upon the plaintiff's experience, skill and judgment to supply a system adequate, suitable and proper to such purpose and conditions. But the defendant says that the system which the plaintiff in fact supplied and installed,

was not one complete continuous white solvent circulating system for eight washers, which the plaintiff was bound by its contract to furnish and instal."

At the trial witnesses for the plaintiff testified that installation called for by the "blueprint 6358" was in fact made. A witness for the plaintiff testified that he installed the plaintiff's system and that he placed one connecting supply pipe underground across the middle of the room instead of around the wall at the end of the building, as shown by the blueprint; that this pipe was placed in a trench which was dug by the defendant's contractor; that this installation had to be done — it made no difference whatever, it merely shortened the pipe. No evidence is reported to show an express assent to this departure from the blueprint, or any implied assent except as may be inferred from the facts stated in the above testimony.

"After the plaintiff's system was put in operation along with the other machinery in the defendant's plant, a large proportion of the garments which went through the plant were found on completion of processing to have yellow spots upon them." At the trial certain of the defendant's witnesses, having various degrees of experience with, and knowledge of, dry cleaning clarification systems, including the plaintiff's system, testified that in their opinions the system was not a "continuous white solvent circulating system"; that it was a continuous system; that it was a circulating system; that it was a white solvent system; but that it was not "a continuous white solvent circulating system for eight washers," because of the fact that in order to get "white solvent" it is necessary with this system, as described in the reported evidence, "to take certain 'batches' of solvent from time to time out of the solvent then circulating in the other parts of the system and purify it to a water white color, and during the time said batch is being purified, the remaining solvent then circulating through the system may or may not be so purified as to be water white." In contradiction of this evidence the plaintiff introduced various witnesses who testified that the system was a continuous white solvent circulating system

for eight washers, for the reasons that it is a continuous system, a white solvent system and a circulating system, and because the "practices in the dry cleaning industry do not call for, and manufacturers do not make, systems which produce water white solvent as an automatic part of the operation, but only by purifying certain parts of the solvent from time to time in 'batches' according to the wishes and requirements of the owner of the particular system."

The plaintiff's system is described in the reported evidence at great length and in detail. In general it supported the contention of the plaintiff and would have warranted the jury in finding that the system was installed in accordance with the written contract. There was evidence, however, on behalf of the defendant, tending to show that the yellow spots which occurred on garments were caused by Huron alkali carried in the current of circulating solvent from the clarifying tanks to the washers, and that the yellow stains were caused by the failure of the plaintiff's system properly to clarify the solvent, thus sending back into the washers unclarified solvent. There was evidence on behalf of the plaintiff tending to show that the system is so constructed that Huron alkali cannot travel with the solvent in the manner contended by the defendant; that the Huron alkali is in any event harmless to fabrics; and that the particular yellow spots were caused by faulty cleansing practices consisting of failure to pre-spot garments to remove fruit stains and the like, the improper use of ammonia thrown directly onto the clothes in the washers, and excessive heat in the drying tumblers; that the method of operating a system such as that of the plaintiff in any particular plant depends upon the wishes of the owner and operator, and that they vary materially from plant to plant; that the amount of purified gasoline is a matter resting wholly upon the decision of the owner and operator of the plant and the type of clothing being washed there.

In the direct testimony of William B. Cooper, the defendant's president and general manager, he testified that

he. had had no previous experience in or with a cleaning and dyeing business. The following two questions were put to him: "Q. Now, Mr. Cooper, did you inform Mr. Gerritson in the beginning that it was your intention to run eight washers? Q. Now, did you rely upon the judgment and skill of Bowser and Company and its agents and representatives to supply you the system that you required?" Upon objection by counsel for the plaintiff, the judge excluded both questions. Counsel for the defendant, as an offer of proof, then offered to show that the defendant company, through Cooper, informed Bowser and Company, through Gerritson, of their purpose to use eight washers in connection with this system, and that the defendant company, through Cooper, relied upon the skill and judgment of Bowser and Company to instal and do the work under its contract and in accordance with the requirements of that purpose. The defendant duly and seasonably excepted to the exclusion of the two questions and of the evidence offered by said offer of proof.

At the close of the evidence the judge directed a verdict for the plaintiff on count 1, on the motion of the plaintiff, and the defendant duly excepted. The jury thereupon found for the plaintiff on the first count and assessed damages. Thereafter, at the request of both parties, the judge, in the exercise of his discretion and for the purpose of saving very substantial expense which would be involved in conventional exceptions, reported the case ".for the determination of the Supreme Judicial Court upon the exceptions . . . stated, for such orders as it may see fit to make." The report contains a statement of all of the facts and evidence material to this report.

We think it obvious, as the plaintiff contends, that its obligation to the defendant under the contract was performed if it installed in the defendant's plant a system which was in accordance with the contract. We further agree with its contention that it makes no difference with the rights of the parties to the contract what the system in fact installed was called provided it, when installed, was a "continuous white solvent circulating system for 8

washers as shown on B 6314" or "blueprint 6358." But it is equally plain that the contract would not be performed within the intent of the parties to it if the system furnished and installed in the plant of the defendant was not "1 Complete continuous white solvent circulating system for 8 washers," even though the system furnished and installed was such as shown on blueprint 6314 or 6358. On the issue of full performance by the plaintiff, raised by the answer of the defendant, the facts were in dispute and the evidence warranted a finding for the defendant. In such a situation a verdict for the plaintiff could not be rightly ordered. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314. *Eddy* v. *Johnston*, 250 Mass. 299, 301. *Hicks* v. *H. B. Church Truck Service Co.* 259 Mass. 272, 276. *C & R Construction Co.* v. *Boston*, 273 Mass. 280, 283. The defendant's exception to the direction of the verdict must be sustained.

Under the common law of this Commonwealth it was held in *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52, 58, that "When the contract [for the sale of goods] is in writing, an additional warranty, not expressed or implied by its terms, that the article is fit for a particular use, cannot be added either by implication of law or by parol proof." The general doctrine that parol evidence is inadmissible to vary or add to a written contract would exclude the proof and the ordinary doctrine of construing contracts by adopting the fair import of the language which the parties have used would exclude such warranty by implication of law. See also *Glackin* v. *Bennett*, 226 Mass. 316. The contract in the case at bar contains the express agreements "That this order shall not be countermanded; that it covers all agreements between parties hereto relative to this transaction, and that S. F. Bowser & Co., Inc., shall not be bound by any representation or promise made by any agent relative to this transaction which is not embodied herein . . . . That the responsibility of S. F. Bowser & Co., Inc., for loss or damage from any cause, is limited to the repairing or replacing of defective material and workmanship, manufactured by it . . . ."

G. L. c. 106, § 17, provides that there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose . . . . (6) An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."

We think there was no implied warranty of fitness upon the facts presented by the report, for the reason that the parties to a contract of sale of goods may expressly stipulate that the contract covers all agreements between them, and that such a stipulation, when made, as here, in the absence of fraud should be held to cover the implication which the law reads into the contract, as well as any special agreement between the parties which is outside the terms of the written contract. *Cannon* v. *Burrell,* 193 Mass. 534. *Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170. *International Textbook Co.* v. *Martin,* 221 Mass. 1, 7. *Glackin* v. *Bennett,* 226 Mass. 316. *Eastern Advertising Co.* v. *E. L. Patch Co.* 235 Mass. 580. *Lasher Co.* v. *Laberge,* 125 Maine, 475. *Sterling-Midland Coal Co.* v. *Great Lakes Coal & Coke Co.* 334 Ill. 281. *McCabe* v. *Standard Motor Construction Co.* 106 N. J. Law, 227. See, contra, *Bekkevold* v. *Potts,* 173 Minn. 87. See also 59 Am. L. R. 1219–1221; Williston on Sales (2d ed.) §§ 239, 239a; and compare *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, 231; *Wallis* v. *Pratt,* [1911] A. C. 394. We further think that the application of the statute would be inconsistent with the "express warranty or condition" of the contract within the provision of clause (6) *supra.* Where the purpose of the Legislature has been to prohibit freedom of contract touching any subject, it is usually expressed by positive mandate. See, for example, G. L. c. 152, §§ 46, 47, and cases reviewed in *Holcombe* v. *Creamer,*

231 Mass. 99, 104–107. No such purpose is manifested in § 17 of the sales act. It follows that the ruling excluding the offer of proof was right.

*New trial ordered.*