ROSE-DERRY CORPORATION *vs.* PROCTOR & SCHWARTZ, INCORPORATED.

PROCTOR & SCHWARTZ, INCORPORATED *vs.* ROSE-DERRY CORPORATION.

Suffolk. February 8, 14, 1933. — November 26, 1934.

Present: RUGG, C.J., CROSBY, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction. *Damages*, In contract. *Bills and Notes*, Holder. *Evidence*, Presumptions and burden of proof. *Words*, "Liability."

At the trial of an action for damages alleged to have resulted from a breach by the defendant of a contract in writing with the plaintiff, it appeared that by the contract the defendant agreed to convert certain machines of the plaintiff into machines of another type and to furnish specified parts and appliances, and that the contract contained references to the operative qualities of the machines after completion of the work and as to the productive capacity of each, and the following: "It is understood that all machinery, materials and supplies herein specified shall be of good and suitable quality, and that all work specified shall be performed in a good and workmanlike manner and shall be completed in the manner and at the time specified . . . . This shall be the limit of the" defendant's "liability under this contract." It further appeared that the defendant failed to convert the machines in a good and workmanlike manner and to use materials of suitable quality. Several months after such failure became apparent, the defendant made changes in the machines, after which there was no contention that they did not operate and produce properly. The plaintiff claimed damages for "losses of time, sales, profits, production overhead, and other expenses, and raw and manufactured goods and materials" resulting from such failure on the part of the defendant, but raised no question as to the time of completion of performance of the contract. The trial judge in effect ruled that the contract should be interpreted as limiting the amount to be recovered

as damages "to the cost of making good the defective machinery" and, there being no evidence of the amount of such damages, ordered a verdict for the plaintiff in the sum of $1 only. On exceptions by the plaintiff, it was *held*, that

(1) The limitation of liability in damages and the failure to include within the limits of liability the payment of damages for the breach of other obligations stated in the contract were not inconsistent with the main purpose of the contract;

(2) The amount which the defendant could have been called upon to pay as damages would have been limited to the cost to the plaintiff of remedying the deficiencies in materials and workmanship, if the plaintiff had undertaken such remedy, or to the difference between the value of the machines if proper materials and workmanship had been employed and the value of the machines as they were delivered, had evidence of such difference been introduced;

(3) No evidence of the amount of such damage having been introduced, the rulings by the trial judge disclosed no error.

At the trial of an action by the payee against the maker of a negotiable promissory note, it was proper to admit in evidence the note, produced by the plaintiff, although it bore a special indorsement by the plaintiff to a bank, and to exclude a letter, offered in evidence by the defendant, which was dated several weeks before the commencement of the action, was signed by the plaintiff, was addressed to the defendant, and stated that the plaintiff had sold the note to the bank and had "no further connection with the matter": the plaintiff as holder of the note was presumed to be the owner of it although it bore his indorsement to the bank, and the letter did not rebut that presumption of ownership.

Two ACTIONS OF CONTRACT. Writs dated March 24 and March 31, 1931, respectively.

In the Superior Court, the actions were tried together before *Morton*, J. Material evidence, rulings by the judge and special findings by the jury are described in the opinion.

By order of the judge, a verdict was returned for the plaintiff in the first action in the sum of $1, and for the plaintiff in the second action in the sum of $14,866.50. Both parties alleged exceptions.

*C. F. Rowley*, (*D. R. Pokross* with him,) for Proctor & Schwartz, Incorporated.

*W. B. Keenan*, for Rose-Derry Corporation, submitted a brief.

DONAHUE, J. These are actions of contract, in the first of which Rose-Derry Corporation as plaintiff has sued Proctor & Schwartz, Incorporated, on two written agreements.

The second action is brought by Proctor & Schwartz, Incorporated, against Rose-Derry Corporation. The declaration contains counts on notes given by the latter as payment under the written agreements and a count for goods sold and delivered to the Rose-Derry Corporation. The cases were tried together in the Superior Court before a jury. In reply to the question submitted: "Did Proctor & Schwartz, Incorporated, fail to make the change-over of the four Derry machines of Rose-Derry Corporation into the double doffer type in a good and workmanlike manner or fail to use materials of suitable quality according to the specifications of the contracts," the jury answered, "Yes." After the jury returned this answer and the answer "No" to the question whether there had been an accord and satisfaction, the judge ruled: "There is a provision in the contract to the effect that damages are limited . . . to the cost of making good the defective machinery and limited to that only," and, there being no evidence as to such damage, directed the jury to return a verdict for the plaintiff for $1 in the case in which the Rose-Derry Corporation was plaintiff.

1. The Rose-Derry Corporation, hereinafter referred to as the Rose-Derry company, was in 1929, and for many years had been, engaged in the manufacture of cotton felt and felt mattresses and in dealing in cotton waste. It had in its factory at Derry, New Hampshire, four so called "garnett" machines which were used to card and process cotton waste and turn it into felt. It had two such machines at its factory in Mechanicsville, New York. In July of that year after oral negotiations between the parties, Proctor & Schwartz, Incorporated, hereinafter referred to as the Proctor company, made a proposal on a printed form with typewritten insertions to furnish the parts and appliances to convert two of the machines at the Derry factory into the "new design Proctor double doffer delivery machines." This proposal was accepted in writing by the Rose-Derry company. In September of the same year the Proctor company made a substantially similar proposal which was also accepted in writing by the Rose-Derry

company with reference to two other machines at the Derry factory and two which were at the Mechanicsville factory. No question is here raised as to the two machines last mentioned. The four Derry machines were taken apart, shipped to the Philadelphia plant of the Proctor company, there remodelled, shipped back to Derry, and erected under the supervision of an employee of the Proctor company. The work of erection was completed in January, 1930, and the machines were put in use. Complaints were made by the Rose-Derry company as to the quality of felt that the remodelled machines produced and various adjustments of the machines were made from time to time by the Proctor company in the effort to improve that quality. In the autumn of 1930, at the suggestion of an employee or agent of the Proctor company, the four machines were shipped to its Boston factory, their cylinders recovered with heat-treated wire without cost to the Rose-Derry company, and they were shipped back to Derry and put in operation. There was no contention that thereafterwards the quality of felt that the machines produced was improper or that the machines did not operate properly.

The jury, by its answer to the question submitted, found that the Proctor company failed to perform its contracts in a good and workmanlike manner or to use materials of suitable quality. Performance in that manner of workmanship and with that quality of material was in terms required by the contracts. The judge in effect ruled that the contracts were to be interpreted as limiting the amount of recoverable damages for such failure in performance to the cost of making good the defective machinery. There was at the trial no evidence from which such cost could be determined. It is the contention of the Rose-Derry company that such an interpretation of the contracts was not warranted and that it was entitled to recover damages for what is described in its declaration as "losses of time, sales, profits, production overhead, and other expenses, and raw and manufactured goods and materials," which losses it is alleged resulted from the failure of the Proctor company to perform its contracts.

In form, the written contracts are substantially the same. Each begins with the statement of a proposal by the Proctor company to furnish the parts to convert the machines of the Rose-Derry company into machines of another type and to furnish other specified parts and appliances. Then follow paragraphs with reference to the erection of the machines at the Derry plant upon their completion, to the matter of the time of shipment from Philadelphia, to parts or appliances to be furnished by the Rose-Derry company in connection with the erection, to the amount and method of payment, to the quality of materials and the character of the workmanship and the manner and time of completion of the work, and other paragraphs. The controversy of the parties with regard to the interpretation of the contracts centers in the following paragraph: "IT IS UNDERSTOOD that all machinery, materials and supplies herein specified shall be of good and suitable quality, and that all work specified shall be performed in a good and workmanlike manner and shall be completed in the manner and at the time specified, subject to the reservation hereinafter contained as to delays caused by causes not within the Company's control. This shall be the limit of the [Proctor] Company's liability under this contract."

The first sentence in this paragraph, considered for the moment apart from the following sentence, was manifestly intended as a statement of the quality of performance required of the Proctor company with regard to materials, workmanship and manner and time of completion. In a contract of this sort some specification of the required character of performance in these respects would naturally be expected. The sentence deals with the manner of performance by the Proctor company up to the time of completion of the work undertaken. Elsewhere in the contracts there are references to the operative qualities of the machines after completion. In one of the two contracts it is stated: "It is understood that the productive capacity of each" of the machines shall be a stated quantity of material per hour, and both contracts recite that the capacity and mechanical operation of the machines were not guaran-

teed unless they were erected by one of the Proctor company's men. But the sentence in question, while specifying the quality of performance to be furnished by the Proctor company up to the time of completion in terms of materials and labor, does not undertake to define or to furnish any specification at all as to the operative qualities of the machines when completed. We do not think that this sentence can fairly be construed as manifesting the intent there to include the operative qualities of the completed machines.

The parties adequately expressed in this one sentence a standard of performance for the Proctor company in respect to the obligations there set forth. No added words descriptive of the quality of performance of those obligations were needed. Nor was it necessary to add anything in order to exclude obligations not expressed in the written contract. (*S. F. Bowser & Co. Inc.* v. *Independent Dye House, Inc.* 276 Mass. 289, 296.) In another clause that exclusion was fully and definitely stated. Additional words were not required to fix a liability in damages upon the Proctor company if it failed in performance to attain the standard set in this sentence. Such liability without express provision to that effect in the written contracts would by law be imposed for the breach of these or of any of the obligations contained in those contracts. Yet the parties added to the sentence we have been considering another sentence, purporting to limit not merely the liability arising under the preceding sentence but "liability under this contract." It is not to be assumed that the parties added the sentence, "This shall be the limit of the Company's liability under this contract," aimlessly, with the intent that it might be ignored. The words must here be given an appropriate meaning if that reasonably and practicably can be done. *Bray* v. *Hickman*, 263 Mass. 409, 414. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367, 375.

Giving to the words employed in the paragraph in question their usual and natural meaning, the language is not ambiguous. Having, in the first sentence, set forth certain

obligations of the Proctor company as to the quality of its performance of the work of remodelling the machines, the second sentence provides in effect that its entire liability under the contract depends upon failure in the performance of those specified obligations. "Liability" is an apt word to state an obligation to pay money because of a disregard of the requirements of a contract (*Bradford* v. *Storey*, 189 Mass. 104) as well as on account of tortious conduct (*Price* v. *Parker*, 197 Mass. 1) or because of the existence of a judgment (*Lodge* v. *Swampscott*, 216 Mass. 260). The statement in a written contract that a limitation is put upon the liability of a party under it fairly expresses the thought that the amount of damages he may be required to pay for failure to perform his obligations is thereby made less than if the contract had not in terms set a limit. The intent is here adequately manifested to limit the Proctor company's liability to the payment of a less amount of damages than if this sentence had been omitted from the written contracts.

Whatever undertakings or warranties of that company are referred to elsewhere, the parties by this paragraph agreed that it should be liable in damages only for a breach of the obligations as to the quality of performance there expressed. The expressed obligations of the Proctor company, the failure to perform which by agreement of the parties alone would impose any liability in damages, are obligations as to the quality and character of materials and workmanship and the completion of the work in the manner and at the time specified. The parties did not include in their specification of such undertakings of the Proctor company as, if not fulfilled, would entitle the Rose-Derry company to damages, any requirement as to the capacity or quality of operation of the remodelled machines. Such omission in a paragraph stating a definite limitation of liability in damages must be treated as significant. The limitation of liability in damages to a breach of the obligations of the Proctor company which are specifically stated in the paragraph in question and the failure to include within the limits of liability the payment of damages for the breach of

other obligations stated in the contracts are not inconsistent with the main purpose of the contracts. That purpose was not the sale of machines nor the construction of machines out of new material. It was rather the taking of old machines and, by labor and the addition of new parts and material, remodelling them.

Viewing the contract as a whole and giving to the words in question their ordinary and natural meaning, we think that the parties adequately manifested the intent that the Proctor company should be required to pay damages only if it failed to furnish materials or workmanship of the specified quality or failed to complete the remodelling of the machines in this manner or within the specified time.

So far as the time of completion and delivery is concerned no question is here raised. Since the parties have by their contract made the Proctor company liable only for deficiencies in the quality of material or workmanship and not for the operating qualities of the remodelled machines, the amount which it could be called upon to pay as damages is limited to the cost of remedying those deficiencies if that reasonably and practicably can be done, or, if not, to the difference between the value of the machines if proper materials and workmanship had been used and their value as they were when delivered. There was no evidence on which the amount of damages could be assessed by either of these methods. While the breach of its obligation by the Proctor company was established, there was no competent evidence of damage. There was no error under these circumstances in directing a verdict for the plaintiff in the sum of $1.

2. The declaration in the action in which the Proctor company is the plaintiff contained counts on a series of notes of which the Rose-Derry company was maker and the Proctor company payee, and a count based on an account annexed setting forth a running account. It is not in dispute that the amount for which the trial judge directed the jury to return a verdict for the Proctor company represented the unpaid balance due on the notes plus the sum

due the Proctor company on the running account. Each of the notes when introduced in evidence at the trial bore the indorsement, "Pay to the order of First National Bank," signed by the Proctor company. The signatures of the Rose-Derry company were not denied. That company took an exception to the admission of the notes in evidence and to the exclusion of a letter from the Proctor company to it, dated March 6, 1931, in which the Proctor company stated that it had sold the notes to the First National Bank of Philadelphia and had "no further connection with the matter." The writ in this action is dated March 31, 1931. The writ in the action in which Rose-Derry company is plaintiff is dated March 24, 1931.

One named as payee in a note who is in possession of it is a holder (G. L. [Ter. Ed.] c. 107, § 18) and may sue thereon in his own name (§ 74). "In this Commonwealth, it is not necessary that the plaintiff in a suit upon a promissory note should have the legal title or beneficial interest in the note, nor indeed that he should have any title or any interest in it." *National Pemberton Bank* v. *Porter*, 125 Mass. 333, 335. *Bovarnick* v. *Davis*, 235 Mass. 195, 198. The holder of a note is presumed to be the owner regardless of the fact that it bears his indorsement in blank, *Parker* v. *Roberts*, 243 Mass. 174, or to a named person. *Dugan* v. *United States*, 3 Wheat. 172. *Loveland* v. *Havlena*, 50 N. Dak. 157. *Third National Bank of Rockford* v. *Phillips*, 112 Kans. 717. For collection of cases see 30 Am. L. R. 328. "The production of the notes at the trial was *prima facie* evidence that the plaintiff had a right to sue on the day of commencement of the action." *Newell* v. *Rosenberg*, 275 Mass. 455, 461. The letter dated twenty-five days before the present suit was begun did not rebut the presumption of ownership in the Proctor company at the time the action was begun or at the time of the trial. The Rose-Derry company had prior to the date of the letter repudiated its obligation on the notes and "the indorsee may have decided that the payee should assume the burden of litigation in the matter. It was no concern of the defendants whether this or some other arrangement was made with the indorsee concerning the

action on the notes." *Newell* v. *Rosenberg*, 275 Mass. 455, 460. There was no error in admitting the notes in evidence or in excluding the letter.

3. In the case in which the Proctor company is the defendant, the exceptions of the Rose-Derry company are overruled. The Proctor company in that case took exception to the failure of the trial judge to direct a verdict in its favor and filed a bill of exceptions. At the argument in this court it agreed that its exceptions should be treated as waived if the exceptions of the Rose-Derry company were overruled. Accordingly the exceptions of the Proctor company are overruled.

In the case in which the Rose-Derry company is defendant its exceptions are overruled and judgment therein must be entered for the Proctor company on the verdict.

*So ordered.*