ROSE C. BRUNS *vs.* JORDAN MARSH COMPANY.

Suffolk.    January 4, 1940. — March 25, 1940.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Practice, Civil,* New trial; Exceptions: what questions open. *Sale,* Warranty. *Notice.*

No abuse of judicial discretion was shown in granting a motion for a new trial on the ground that it appeared to the judge that the jury improperly had experimented with an exhibit.

After the proper allowance of a motion by the plaintiff for a new trial, an exception by the defendant, to the denial of a motion for the ordering of a verdict at the trial thus nullified, had no standing.

Upon evidence that a customer considering the purchase of a pair of shoes on display in a store was assured, on inquiry of a salesman of the defendant, that the shoes were durable and substantial, that the customer thereupon purchased them, and that, after the shoes had been worn only a few times, the customer fell and was injured because the heel of one came off, warranted findings that the salesman knew that the shoes were intended for personal wear by the customer, that the customer relied on his skill and judgment, and that there was breach of both an implied warranty of fitness and an express warranty of the durable and substantial character of the shoe.

A finding of seasonable and adequate notice under G. L. (Ter. Ed.) c. 106, § 38, of a breach of warranty of shoes sold and charged to the purchaser at a special sale at a department store was warranted by evidence that on the day following an injury sustained by the customer twelve days after the sale and caused by a fall due to the heel of one of the shoes becoming detached, a friend of the customer in a telephone conversation with the authorized adjuster of the store told him of the injury and that the customer "wanted the claim agent right away" and that "her doctor says she had a good case."

A notice by a buyer to a seller of a breach of warranty of quality of shoes sold was not seasonable under G. L. (Ter. Ed.) c. 106, § 38, if the parties lived in the same city, the buyer had available the usual means of communication, and the notice was not given until four and one third months after the breach was discovered and four and two thirds months after the sale.

CONTRACT OR TORT. Writ in the Superior Court dated June 28, 1935.

The declaration set out a claim for a breach of warranty in the sale of shoes to the plaintiff.

The first trial of the action was before *O'Connell*, J., and the second before *Dillon*, J., where there was a verdict for the plaintiff in the sum of $2,750.

*T. B. Shea*, for the plaintiff.

*C. C. Craig*, for the defendant.

RONAN, J. The plaintiff was injured on October 4, 1934, when she fell downstairs by reason of the heel becoming detached from the left shoe of a pair she had purchased from the defendant on September 22, 1934, and which, she alleges, were not in accordance with the warranty made by the defendant at the time of their purchase. The jury at the first trial returned a verdict for the defendant. The plaintiff's motion for a new trial was granted. The plaintiff had a verdict at the second trial but the judge, under leave reserved, entered a verdict for the defendant. The defendant saved exceptions to the failure of the judge to grant its motion for a directed verdict at the first trial and excepted to the granting of the motion for a new trial. At the second trial, the defendant saved an exception to a portion of the charge, and the plaintiff excepted to the entering of a verdict for the defendant under leave reserved.

There was no error in granting the plaintiff's motion for a new trial. The heel was not fastened to the shoe at the first trial and each was submitted to the jury as a separate exhibit. When the jury returned their verdict, it was noticed that the heel had been attached to the shoe. The judge then interrogated the officer who had charge of the jury and was informed that the shoe and the heel were not attached when they were taken into the jury room but that the heel was fastened to the shoe when the jury brought in their verdict. "There appeared to have been an extra nail driven into the shoe." The plaintiff's motion for new trial set forth, among other reasons, that the jury had experimented with the shoe and had attached the heel to the shoe by inserting one or more nails "for the purpose of experimenting with methods of attachment of the heel to the shoe." The motion was granted upon this ground. Sometime after this motion had been allowed, and prior to the second trial, what had appeared to the judge and counsel to be an extra nail was discovered to be only a nail head.

The presiding judge was familiar with the appearance and condition of the shoe and the heel when they were introduced in evidence and when they were returned by the jury. Whether the heel had been properly and reasonably attached to the shoe was a crucial issue. The plaintiff had no case unless she proved that the heel had not been reasonably fastened to the shoe. Apparently, the judge and counsel at the time the motion was granted believed that a nail had been driven into the heel during the deliberation of the jury. It may be that, if at that time the heel had been separated from the shoe, it might then have been discovered that no new nail had been driven through the heel into the sole of the shoe. We do not know from the record what inspection was made of the shoe before the judge decided to grant the motion. It was for him to decide what had been done to the shoe in the jury room and then determine whether such an occurrence was a mere irregularity affecting no substantial rights of the parties or whether it resulted in depriving the plaintiff of a fair and impartial trial. Findings of fact

made at a hearing upon a motion for a new trial are final but rulings of law are open to revision by this court. *Shanahan* v. *Boston & Northern Street Railway*, 193 Mass. 412. *Simmons* v. *Fish*, 210 Mass. 563. *Dziegiel* v. *Westford*, 274 Mass. 291. The judge, however, made no rulings of law. Much must be left to his sound judicial discretion. If he was satisfied that the conduct of the jury had a strong tendency materially to affect their verdict he was authorized to grant a new trial. It cannot be said as matter of law that the judge was wrong if he found that the experimenting on the shoe and heel was likely appreciably to influence the judgment of the jurors. The action of the judge cannot be said to be arbitrary or to constitute an abuse of sound judicial discretion. *Commonwealth* v. *Desmond*, 141 Mass. 200. *Harrington* v. *Worcester, Leicester & Spencer Street Railway*, 157 Mass. 579. *Manning* v. *Boston Elevated Railway*, 187 Mass. 496. *Commonwealth* v. *Capland*, 254 Mass. 556. *Commonwealth* v. *Friedman*, 256 Mass. 214. *Claffey* v. *Fenelon*, 263 Mass. 427. If the judge had found that the plaintiff had not been prejudiced by the conduct of the jury, then an exception to the refusal of her motion could not be sustained. *Bradford* v. *Boston & Maine Railroad*, 225 Mass. 129. *Collins* v. *Splane*, 230 Mass. 281. *Commonwealth* v. *Dies*, 248 Mass. 482. Our inquiry is not whether the judge was compelled to grant a new trial but whether the allowance of the motion was as matter of law an abuse of sound judicial discretion. *Skudris* v. *Williams*, 287 Mass. 568. *Commonwealth* v. *Polian*, 288 Mass. 494.

The action of the judge must be determined by the facts as they appeared at the time the motion was granted, and not as they are shown to be by subsequent events. The situation is analogous to that commonly prevailing where a party seeks a reversal of a verdict on the ground that the facts upon which it was based have been shown by newly discovered evidence not to have existed at the time the verdict was rendered. We do not know when the head of the nail, which was formerly considered as a new nail driven into the heel, was inserted into the heel. In any event, the defendant is not shown by the record to have sought a re-

versal of the order granting a new trial. *McKinley* v. *Warren*, 218 Mass. 310. *Paper Trucking Co.* v. *Russo*, 281 Mass. 209. *Bucholz* v. *Green Bros. Co.* 290 Mass. 350, 354. Rights must be seasonably asserted if reliance is to be placed upon them. *Byfield* v. *Newton*, 247 Mass. 46. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30. *Castaline* v. *Swardlick*, 264 Mass. 481.

The defendant's exception to the refusal to grant its motion for a directed verdict at the first trial is not open for determination. As there was no error in granting a new trial, all the questions saved at that trial ceased to have any vitality when the trial itself had come to naught. That trial is no longer of any force and effect, and an error alleged to have been committed at such a trial has lost its substance and become moot. *Welsh* v. *Milton Water Co.* 200 Mass. 409. *Nagle* v. *Driver*, 256 Mass. 537. *Bresnahan* v. *Brighton Avenue Baptist Church*, 279 Mass. 300. *Zwick* v. *Goldberg*, 304 Mass. 66.

The defendant urges that, if the judge had granted its motion for a directed verdict, the incident that resulted in a new trial would not have occurred. We assume that may be true. Our inquiry, however, is not to determine how an alleged error could have been avoided at the trial but how any portion of a trial can be reviewed when the entire trial itself has become a nullity. The defendant cannot now complain of such an error.

There was evidence at the second trial that the plaintiff went to the defendant's store and took a pair of "Moseley" shoes from among those that were exhibited for sale upon a table. She showed them to the salesman to see if they were the right size. He flexed the shoes, softened the counters to make them pliable, and fitted the shoes to her. She had the clerk fit the shoes "to see if they were all right and durable and sensible and substantial for what I wanted to use them for." There was more to the transaction than taking the shoes to the clerk and having them fitted and then having them charged and sent to her. She testified: "I had that other conversation about their being substantial." She had previously bought shoes from the defendant,

a reliable store, and she did not have any doubt that these shoes were all right and suited for her use.

The jury could find that the plaintiff took the shoes from the table to ascertain whether they were the correct size for her and to learn from the salesman whether they were durable, sensible and substantial; and that their selection did not become final until after they had been fitted and after she had talked with the clerk concerning their being substantial. There was evidence that the plaintiff had such a conversation with the salesman. This conversation was a part of the transaction which began with taking the shoes from the display table, the fitting of them by the clerk to the plaintiff who wanted to see not only if they were the right size but also if they were durable and substantial, and their purchase by the plaintiff. Upon such a background it was a permissible inference for the jury to draw that, before their purchase, the plaintiff had inquired of the clerk whether the shoes were durable and substantial; and the jury could further infer that he had informed her that they were, in view of the fact that she finally decided to purchase them. It was a question of fact whether such statements induced the plaintiff to purchase the shoes. There was sufficient evidence to warrant a finding that the salesman had implied authority to answer such inquiries of a customer who was contemplating the purchase of goods and that such statements of the clerk would bind the defendant. *Idzykowski* v. *Jordan Marsh Co.* 279 Mass. 163. *Smith* v. *Denholm & McKay Co.* 288 Mass. 234. Whether the clerk knew from fitting the shoes to the plaintiff and from her conversation that they were intended for her personal wear, and whether in making her purchase the plaintiff relied upon the skill and judgment of the clerk that the shoes were reasonably fit for her use, and upon his statements that the shoes were durable and substantial, were also questions of fact. *Flynn* v. *Bedell Co. of Massachusetts*, 242 Mass. 450. *Ireland* v. *Louis K. Liggett Co.* 243 Mass. 243. *Holt* v. *Mann*, 294 Mass. 21.

In the opinion of the majority of the court there was evidence from which the jury could find an implied warranty

of fitness and also an express warranty, *Flynn v. Bedell Co. of Massachusetts*, 242 Mass. 450; *Idzykowski* v. *Jordan Marsh Co.* 279 Mass. 163; *Jamrog v. H. L. Handy Co.* 284 Mass. 195. The detachment of the heel from the shoe after the plaintiff had worn the shoes only six or eight times and while she was proceeding downstairs was evidence that the shoes at the time of their purchase were not reasonably fit for the plaintiff's use or that they were not substantial and durable. The weight to be given to this evidence was likewise for the jury. *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251. *Blanchard v. Kronick,* 269 Mass. 464. *Country Club Soda Co. Inc.* v. *Arbuckle,* 279 Mass. 121. *Jamrog v. H. L. Handy Co.* 284 Mass. 195. *Johnson v. Kanavos,* 296 Mass. 373. *Guthrie v. J. J. Newberry Co.* 297 Mass. 245. *Paradis v. A. L. Nichols Co.* 299 Mass. 364. *Timmins v. F. N. Joslin Co.* 303 Mass. 540. *David Jones Ltd.* v. *Willis,* 52 C. L. R. (Aust.) 110. While there was no evidence of a warranty that the shoes would be substantial or durable for any particular time, the jury as men of common sense and sound judgment could find that the separation of the heel from the shoe so soon after the purchase, when the shoes were being used in the ordinary way for which they were intended, was sufficient evidence, in view of the testimony of the plaintiff's expert, that the shoes were not suitable for the plaintiff's use and that they were not as represented by the salesman. A vendor of shoes which proved to be defective has been held liable for personal injuries resulting from the breach of his agreement to repair one of these shoes "properly . . . [so that] it would be good in appearance as well as safety." *Higgins* v. *Gilchrist Co.* 301 Mass. 386, 389. It has also been held that a jury could properly find that a bed was not reasonably fit for use at the time of its sale, when it appeared that while in use six months later parts of the head post separated, precipitating one of the occupants to the floor. *Paradis v. A. L. Nichols Co.* 299 Mass. 364. In *Morley* v. *Consolidated Manuf. Co.* 196 Mass. 257, the vendor made no express or implied warranty in the sale of a used automobile and consequently the breaking of a

shaft after two months' use did not entitle the vendee to sue for damages.

The plaintiff could not recover for breach of warranty unless she gave notice thereof to the defendant within a reasonable time after she knew of the breach. G. L. (Ter. Ed.) c. 106, § 38. The giving of such a notice was a condition precedent to establishing the defendant's liability. *Learned v. Hamburger,* 245 Mass. 461. *Idzykowski* v. *Jordan Marsh Co.* 279 Mass. 163. *Smith* v. *Denholm & McKay Co.* 288 Mass. 234. *Savage* v. *Alpha Lunch Co. of Boston,* 300 Mass. 520.

The jury could find that, on the day following the accident, a friend telephoned to the defendant and talked with one Haworth, an adjuster, who it could be found had authority to receive a notice of breach of warranty. Haworth was informed that the heel came off the shoe and that the plaintiff was injured. He testified that he was told that "Mrs. Bruns had on a pair of our Moseley shoes and fell downstairs in her home. Wanted the claim agent right away. Said there was a flaw in the shoe. Her doctor says she had a good case." The plaintiff had purchased these shoes on credit on September 22, 1934, and they had been sent by the defendant to her home. It would not be unreasonable to find that the defendant had a record of this sale. Moreover, there was evidence that the defendant had bought out the stock of the T. E. Moseley Co.; that the tables upon which the goods were displayed for sale to its customers had signs which stated that the stock was the complete stock of the Moseley company; and that this stock of shoes was on sale on September 22, 1934. This lot of shoes was sold at a special price. The defendant was informed that the shoes came from this stock and the price charged to the plaintiff upon the records of the defendant, which the jury could infer were made by the defendant, would serve not only to identify the lot from which the sale was made but would fix the time of the purchase as occurring during the period that this lot of shoes was offered for sale to the public. It would not be unreasonable to infer that, the sale being on credit, the records of the defendant would indicate the date of sale. The plaintiff visited the defend-

ant's claim department on February 14, 1935, and told the defendant's employee about the accident, and she left the shoes with him at his request. She was told that the defendant had a record just exactly as her friend telephoned on the day after the accident. The notice referred to a purchase of a particular kind of shoes which, although the date was not given, might readily be found, in conjunction with the records that the defendant might reasonably be assumed to keep, to be September 22, 1934. The plaintiff complained that she was injured by reason of the heel becoming detached from the shoe. The notice could be understood to be a claim for damages. Such a notice, even if we disregard the notice personally given by the plaintiff on February 14, 1935, and that of her attorney on April 30, 1935, could be found fairly to comply with the statute. G. L. (Ter. Ed.) c. 106, § 38. *Nashua River Paper Co.* v. *Lindsay,* 249 Mass. 365. *Stein* v. *Almeder,* 253 Mass. 200. *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195. *Smith* v. *Denholm & McKay Co.* 288 Mass. 234. *Johnson* v. *Kanavos,* 296 Mass. 373. *Guthrie* v. *J. J. Newberry Co.* 297 Mass. 245. *Timmins* v. *F. N. Joslin Co.* 303 Mass. 540. There was sufficient evidence to support the alleged cause of action and to require its submission to the jury. There was error in entering a verdict for the defendant.

The judge left it to the jury to determine whether the notice that the plaintiff gave the defendant in February, 1935, was given within a reasonable time. The notice must be seasonably given in order to protect the seller against belated claims for damages. Where the evidence is in dispute and open to different inferences, the question whether an act has been done within a reasonable time after the happening of a certain event is ordinarily a question of fact, but where the facts are not in dispute the question becomes one of law. *Loring* v. *Boston,* 7 Met. 409. *Prescott Bank* v. *Caverly,* 7 Gray, 217. *Lewis* v. *Worrell,* 185 Mass. 572. *Keefe* v. *Hart,* 213 Mass. 476. *Orr* v. *Keith,* 245 Mass. 35. *Lowry* v. *Commissioner of Agriculture,* 302 Mass. 111. A notice in February, 1935, of a breach of warranty occurring on October 4, 1934, was not given within a reasonable time

by the buyer, who lived in the same city as the seller and who had available the usual means of communication, and the jury should have been so instructed. The defendant's exception must be sustained. *Skillings* v. *Collins*, 224 Mass. 275. *Lincoln* v. *Croll*, 248 Mass. 232. *McNulty* v. *Whitney*, 273 Mass. 494. *Putnam* v. *Great Atlantic & Pacific Tea Co.* 304 Mass. 364. In *Schuler* v. *Union News Co.* 295 Mass. 350, the purchaser died within ten days of eating the contaminated food and the notice was given the day following the appointment of the administratrix.

It follows that the defendant's exceptions taken at the first trial and to the granting of the motion for a new trial must be overruled and the exceptions taken by each party at the second trial must be sustained.

*So ordered.*