**D'ORSAY EQUIPMENT CO., Inc.,**
**Plaintiff,**

v.

**UNITED STATES RUBBER COMPANY,**
**Defendant.**

**Civ. A. No. 58–772–C.**

United States District Court
D. Massachusetts.

Nov. 22, 1961.

428

Bernard P. Rome, Boston, Mass., for plaintiff.

Edmund Burke, Hale & Dorr, Boston, Mass., for defendant.

CAFFREY, District Judge.

This is an action of contract in which the plaintiff, D'Orsay Equipment Co., Inc., a Massachusetts corporation with its principal place of business in Malden, Massachusetts, seeks to recover $11,248.-88 from the defendant, United States Rubber Company, a New Jersey corporation. Jurisdiction of this Court is invoked on the basis of diversity of citizenship of the parties.

On December 8, 1955, the defendant sent a written quotation to plaintiff, by the terms of which defendant offered to sell to plaintiff a lot of 100,000 rubber milk-dispenser tubes at a price of $81.50 per thousand. The quotation provided that the tubes would be $21\frac{1}{2}''$ long, possess an inside diameter of $\frac{5}{16}$ of an inch, an outside diameter of $\frac{15}{32}$ of an inch, and have rubber-plugged ends. It stated that the quoted price included individual packing of each tube in a separate polyethylene bag and the packing of cartons containing 250 tubes per carton. It likewise contained the provision: "We are quoting White Compound C4 125." In the "Terms" portion the document provided for a two per cent discount if payment was made within ten days; that shipments were F.O.B. Passaic, New Jersey; and that freight would be allowed on shipments of 200 pounds and over. Immediately below the above-summarized provisions of the quotation, all of which appeared in typewriting, the

following language appeared in printing as part of the prepared quotation form:

"Except to the extent specified above, all quotations, orders, sales and deliveries, as to this or any other merchandise, are subject to the conditions of sale printed on the reverse side hereof. United States Rubber Company."

The reverse side of the quotation contained a full printed page of conditions, said conditions being eight in number.

After receipt of this quotation, plaintiff placed an order with defendant for 100,000 tubes, which order was filled, the tubes were received and paid for by plaintiff, and subsequently were resold without incident by plaintiff to its customers. Plaintiff is a distributor of supplies and equipment to dairies and affiliated businesses and it ordered the rubber tubes for resale by it to its wholesale customers, most of whom were either dairies or large distributors of milk and associated products, including H. P. Hood, United Farmers, and Whiting.

The procedure followed was for defendant to ship tubes from its factory in New Jersey to Bay State Packaging Co. in Boston. This firm in turn individually wrapped the tubes in polyethylene wrappers and placed them, 250 to a box, in boxes which at the request of plaintiff were labeled with the name D'Orsay Equipment Co., Inc. As plaintiff needed tubes for its customers it withdrew them from the stock on hand at Bay State.

On May 11, 1956, plaintiff placed another order with defendant. This order was for 250,000 tubes, and was evidenced by Plaintiff's Exhibit 3, a printed form of the D'Orsay Equipment Co., Inc. which provided in material portion as follows:

"Please enter our order for the following, subject to the terms and conditions hereon. Quantity, 250M. Description, Dispenser-Tubes to be released as ordered in lots of 25M. Price, $81.50/M."

On the bottom of this form appears the legend:

"Please acknowledge receipt of this order immediately giving a definite shipping date. If prices are higher than shown hereon or last quoted, notify us at once before filling this order."

In response to this order, plaintiff received from defendant a letter dated May 15, 1956 (Plaintiff's Exhibit 4), which stated:

"We wish to acknowledge and thank you for your order No. 03227 for 250,000 dispenser-tubes. We wish to advise that this material will be made up and held at our warehouse for your releases in lots of 25,000 pieces."

Thereafter, as the defendant shipped lots of tubes to Bay State, defendant sent and plaintiff received invoices for and paid to defendant the sum of $11,-248.88, which constitutes the contract price for 139,250 of these rubber tubes.

The controversy between the parties arises as a result of plaintiff's contention that a substantial number of the tubes delivered pursuant to the May 11, 1956 order were not of a merchantable quality, either by reason of (1) being too rigid, with the result that the clamping device in the Norris Dispenser (a piece of equipment in which these tubes were intended to be inserted by the ultimate users thereof) would not close the tubes so as to dam the flow of milk or cream from the 5-gallon cans which were connected to these tubes in Norris Dispensers used by plaintiff's customers, or (2) being "tacky," with the result that when the clamp of the Norris Dispenser was applied to them the insides of the tubes would remain stuck together so that no flow of milk or cream would result upon releasing the clamp of the Norris Dispenser.

Plaintiff's position is that these tubes, as a result of these defects, were not of a merchantable quality, and that as a result plaintiff may rescind the contract and reclaim the purchase price of the material by reason of the statutory warranties contained in the Uniform Sales

**430**

Act which was in effect in both Massachusetts and New Jersey at all times material to this controversy.

Defendant denies that anything more than a negligible number of tubes were not of merchantable quality and further contends that even assuming that the quality of the tubes amounted to a material breach of the Uniform Sales Act warranty of merchantable condition and/or fitness for the particular purposes, these warranties of the statute are not available to plaintiff in this litigation by reason of the fact (1) that the conditions of sale referred to above specifically eliminate any statutory warranties or other undertaking by the seller, whose obligations for breach of warranty are described in paragraph 4, and (2) that plaintiff had failed to give seasonable notice of his dissatisfaction as required by both the conditions of sale and the Sales Act. Paragraph 4 of the Conditions of Sale provides:

"The Seller's products are not guaranteed for any specific length of time or measure of service but are warranted only to be free from defects in workmanship and material, and all goods shall be subject to Seller's normal manufacturing tolerances. Only those warranties herein set forth shall be deemed to have been made by the Seller, or relied upon by the Buyer. All previous communications, whether in the form of engineering recommendations or otherwise, are effective only to the extent therein contained.

"The Seller's liability for breach of the above warranty is limited to refunding the purchase price of the merchandise, or at the Seller's option, to replacement upon its return. Under no circumstances shall the Seller be responsible for consequential damages.

"No claim for any breach of warranty herein will be considered unless delivered in writing to the Seller within thirty (30) days after date of delivery of the first shipment with respect to which claim is made."

To dispose of this argument based on the disclaimer of warranty, plaintiff contends that the quotation is not part of the contract under which the tubes involved herein were sold and that the contract of the parties is composed merely of Plaintiff's Exhibits 3 and 4, i. e., Purchase Order No. 03227 on plaintiff's order blank, dated May 11, 1956; and letter of the United States Rubber Company, dated May 15, 1956, acknowledging receipt of the order.

[1] I rule that the contentions of the plaintiff that the December 8, 1955 quotation is not a part of the contract are totally untenable. I find that both subsequent to the execution of the contract and as late as the date of filing of plaintiff's memorandum of law, plaintiff at all material times took the position that defendant was required to individually wrap and pack the tubes. This obligation is mentioned only in the quotation of December 8, 1955. The quotation itself expressly states that it applies to the sale contemplated therein and to all subsequent sales of other merchandise to the same party, and plaintiff's order blank refers back to the last quotation in the printed legend cited above. I find and rule that Plaintiff's Exhibits 3 and 4 taken alone are inadequate to spell out an enforceable contract, since these two documents do not indicate what kind of tubes were the subject of sale, nor do they provide adequately for either payment or delivery.

■ It is also significant that the two per cent discount for cash payment within ten days, which plaintiff took advantage of in every shipment of tubes save one, i. e., those shown by Exhibits 6, 7, 8, 9, and 11, is provided for only in the quotation. Plaintiff has no right to a cash discount, which in fact he received, except on the basis of the allowance thereof in the quotation of December 8, 1955. Plaintiff cannot extract from the quotation in question the benefits of saddling defendant with the obligation of packaging, and of saddling defendant with the requirement of a two per cent discount, both of which inure to plain-

tiff's benefit, without also assuming the other provisions contained in said quotation. I find that the parties contemplated that their agreement would be embodied by the December 8, 1955 quotation (Defendant's Exhibit A), the May 11, 1956 Purchase Order (Plaintiff's Exhibit 3), and the May 15, 1956 letter (Plaintiff's Exhibit 4).

Under the contract, liability of the seller for breach of warranty is limited to "refunding the purchase price of the merchandise, or *at the Seller's option,* to replacement upon its return." (Emphasis added.) The first question under this contract is whether any tubes were in fact defective, or, as stated in paragraph 4 of Conditions of Sale, beyond the Seller's normal manufacturing tolerances. On this point no evidence was offered to establish what, in fact, was encompassed within "normal manufacturing tolerances," nor was any evidence offered to either prove or disprove that the tubes were made of White Compound C4 125 as required by the quotation. The evidence which was presented was inconclusive and contradictory. Witnesses called by plaintiff testified to much dissatisfaction on their part with tubes they received from plaintiff. These witnesses, however, did not establish that the tubes which were the subject of their complaint were, in fact, manufactured by the defendant. Nor did they establish that the tubes were not C4 125 or that they were beyond normal manufacturing tolerances. There was evidence that in 1956, the year in which most of the complaints were said to occur, plaintiff also purchased a substantial number of tubes from another supplier, the Chardon Rubber Company; and there was also evidence that as a matter of good will the plaintiff would exchange an entire box if a customer indicated that it contained even one defective tube. It is not without significance that while plaintiff, in a letter dated July 22, 1957, made the representation to defendant "We have lost practically all our tube business on the tail-end of this deal that we had" (Defendant's Exhibit F), sales records

maintained by the plaintiff (Defendant's Exhibit B) show that in fact plaintiff sold 165,000 tubes in 1956, that its tube sales increased to 367,828 in 1957, and again increased to 411,019 in 1958. It is obvious that this letter, which is in the nature of a self-serving declaration, did not state the facts as they actually existed.

It is interesting, also, to note that despite the plaintiff's claim of substantial defects in the merchandise and extensive replacement of material, the only entry in plaintiff's sales books that indicates any replacement whatsoever was a replacement of 250 tubes on May 22, 1956 for Helfand's Dairy.

Plaintiff's sales records for the years 1956 and 1957 indicate sales to many prominent milk dealers, such as H. P. Hood, Cumberland Farms, Wason Mac-Donald, Findeisen, Seven Oaks Dairy, Herlihy Brothers, Kydd's Dairy, Deerfoot Farms, and Whiting Milk Company. No records of any of these companies, however, were offered tending to corroborate the claimed defects.

■ Plaintiff has failed to carry its burden of proof on the issue of the number of defective tubes sold to it by defendant under the contract. While I am satisfied from the evidence that plaintiff did receive complaints from its customers, I feel that there has been a failure of proof on the part of plaintiff to show that a material number of these tubes were in fact defective.

■ Even assuming that there was a breach of warranty by the defendant, however, plaintiff's rights under the contract were limited to accepting, at the seller's option, the replacement of defective tubes or a refund. Here, the seller notified the plaintiff of its intent to replace any tubes found defective, but the plaintiff, by its letter of August 5, 1957 (Plaintiff's Exhibit 16), refused to accept this remedy which, under the contract, means that plaintiff refused the only recourse left open to it for breach of warranty under this contract. See S. F. Bowser & Co. v. Independent Dye House,

276 Mass. 289, 177 N.E. 268 (1931); Dekofski v. Leite, 336 Mass. 127, 142 N.E.2d 782 (1957); Naegeli v. Silk City Exchange, 134 A. 721, 4 N.J.Misc. 763 (1926); Williston on Sales, Sec. 239; 75 A.L.R. 1080; and Section 71 of the Uniform Sales Act, G.L. c. 106, § 60.*

Although plaintiff's complaint is based on breach of warranty, in its Brief plaintiff argues that it had a right to refuse to accept the goods and to recover payments which it allegedly made in error. Plaintiff relies on Section 45(2) of the Uniform Sales Act, Mass.G.L. c. 106, § 34, subsec. (2),† which provides, in substance, that a buyer, under a contract to purchase goods to be delivered by stated installments, may treat the entire contract as broken and sue thereon if defective deliveries are substantial.

The evidence is not clear as to exactly how delivery was to be made to plaintiff. It would seem, however, that the defendant had fulfilled its obligation in this respect once it had delivered the goods to Bay State for packaging and Bay State, in turn, had actually packaged the tubes as required by the contract. This conclusion is borne out by the fact that the quotation referred to above stated that shipment was F.O.B. Passaic, New Jersey. The amount of control which the plaintiff exercised over the tubes after they were packaged also supports a finding that the defendant's obligations as to delivery were so limited under the terms of the agreement.

But even aside from the fact that delivery of the goods seemed to have been accomplished in this way, the evidence as reviewed above does not show defects sufficiently material to give plaintiff a right to treat the contract as breached, just as it does not show a breach of the express warranty of workmanship and material.

Furthermore, even if the plaintiff did have the legal basis for recovery on the collateral ground of an alleged mistake in payment, plaintiff has not carried its burden of showing that the payments were in fact made in error.

The president of the plaintiff corporation testified that although he signed the checks in payment for the various invoices (Plaintiff's Exhibits 6, 7, 8, 9, 10, and 11), he did so because an inexperienced bookkeeper, allegedly employed in the summer of 1956, placed these invoices in line for payment and for his signature on the checks, through inexperience. I do not credit this statement as to the reason for the payment and, on the contrary, I find that plaintiff's president who testified at the trial and gave every indication of being an experienced businessman, paid the invoices (except that invoice which is numbered Plaintiff's Exhibit 10) within ten days of receipt, in order to take advantage of the ten day-two per cent cash discount. This is borne out by the fact that checks in the discounted amounts were issued and received in payment, and by the fact that on four of the discounted invoices the deadline date for the two per cent discount is circled in colored pencil. I find that payment was not made due to a mistake but, on the contrary, was made to take advantage of the ten day-two per cent cash discount.

As to the final contention which the defendant makes, that plaintiff had not given notice of its dissatisfaction as required, although this issue need not necessarily be determined, an evaluation of the evidence on this point again indicates that plaintiff did not meet the burden imposed upon it to show that notice had been given either within thirty days after delivery, as required by the conditions contained in the quotation, or within a reasonable time, as required by Mass. G.L. c. 106, § 38.** Plaintiff's Exhibit 11 shows that the last shipment of tubes under the disputed contract was made by

---

\* See Uniform Commercial Code, c. 106, §§ 1–102(3), 1–205(1, 2), 2–208(2), 2–719 (1).

† See Uniform Commercial Code, c. 106, § 2–612.

\*\* See Uniform Commercial Code, c. 106, §§ 2–512(2), 2–601(b), 2–605(1), 2–607(2, 3), 2–714(1).

defendant on March 13, 1957. The defendant then sent to the plaintiff an invoice covering this last shipment dated March 19, 1957, which the plaintiff paid by a check dated April 12, 1957. The plaintiff thereafter notified the defendant, by a letter dated August 5, 1957, of its intention not to accept the merchandise.

By the terms of the condition in the quotation held to be controlling here as a part of the contract, a claim for a breach of the express warranty of workmanship and material had to be made within thirty days from the date of delivery of the first shipment. Even if each shipment on plaintiff's order is considered separately, so that the last shipment, the shipment closest to the time of notification, is viewed alone, it is clear that the plaintiff did not comply with the thirty day requirement. Notification was nearly five months after the actual date of shipment and nearly four months after payment. There is no evidence as to when the tubes in the last shipment were packaged, and in the resulting vacuum it cannot reasonably be inferred that the packaging of this shipment was delayed for four months (i. e., until July 13, 1957) to bring the time of notification to within thirty days of delivery, as delivery is interpreted above. Thus, proper notice was not shown even as to the last shipment considered by itself.

Aside from the thirty day requirement condition of the quotation, the lapse of time before the plaintiff gave notification would also not satisfy the requirement of Mass.G.L. c. 106, § 38. Although plaintiff received complaints from customers regarding the tubes at least as early as August 1956, as evidenced by Plaintiff's Exhibit 12, a letter from the plaintiff which passed along to the defendant a complaint made by H. P. Hood, plaintiff nevertheless continued to make payments to defendant on subsequent shipments and did not give notification of its intent to rescind the contract until August 5, 1957, approximately one year after the alleged defects were first brought to its attention by this

particular customer. This clearly would not be notification within a reasonable time, as required by the Sales Act. See Bruns v. Jordan Marsh Co., 305 Mass. 437, 26 N.E.2d 368 (1940); and Murphy v. Gilchrist Co., 310 Mass. 635, 39 N.E. 2d 427 (1942).

Judgment for the defendant.