NATIONAL OVERALL DRY CLEANING COMPANY *vs.* MEYER YAVNER.

Suffolk. May 7, 1947. — June 9, 1947.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN & SPALDING, JJ.

*Equity Jurisdiction*, Specific performance. *Contract*, With labor union, Of employment, Performance and breach, Waiver. *Labor and Labor Union. Waiver. Moot Question. Evidence*, Extrinsic affecting writing.

An amendment of a bill in equity going to the essence of the plaintiff's case, followed by an amendment of the answer and a hearing on the merits on the amended pleadings, rendered moot an interlocutory decree overruling a demurrer to the original bill, and an appeal from such decree presented no question of law and was dismissed.

The fact, that an agreement, signed by an employer corporation and a labor union to which one of its employees belonged, was not also signed by other members of an employers' association although it stipulated that it "must be signed by the individual members of the association," did not make unenforceable against the employee a provision thereof in substance precluding members of the union, after the termination of their employment for any reason, from soliciting the employer's customers, where it appeared that the employee was familiar with the terms of the agreement, that he had, with the employer and the union, fully performed it to the time of his discharge, and that he had participated as a fully authorized representative of the union with the members of the association in effecting an extension of the agreement during a period when new agreements with all members of the association were being negotiated.

A provision, in substance that any employee ceasing to be employed by his employer for any reason would not for the period of twelve months thereafter "solicit business from any customer served by him or by any other employee of" his employer, which was included in a contract made with the employer by a union on behalf of its members employed by him, was binding on a discharged union employee of the contracting employer and, in a suit in equity by the employer to enforce the provision against the employee, the defendant, by reason of further provisions of the contract that all previous agreements between the union and the employer had become null and void and that no member of the union should sign or make any individual agreement with the plaintiff, was not entitled to show that, prior to entering the employment of the plaintiff, he had an oral agreement with the plaintiff by which he should retain as his own personal property the patronage of the customers he then had.

Upon the record, including a report of the evidence, of an appeal by the defendant from a decree in a suit in equity by an employer against a discharged employee seeking relief under a provision of a contract between the plaintiff and a labor union binding upon the defendant as a member of the union, that an employee ceasing to be employed by the plaintiff for any reason would not for the period of twelve months thereafter "solicit business from any customer served by him or by any other employee of" the plaintiff, there was no evidence showing the manner in which the defendant's discharge had been accomplished or whether the plaintiff had met requirements as to payments due the defendant, and the case was remanded for further hearing to determine whether the plaintiff had performed the contract he sought to enforce.

BILL IN EQUITY, filed in the Superior Court on September 10, 1946, and afterwards amended.

The suit was heard by *Cabot*, J.

*M. A. Cherwin*, for the defendant.

*F. A. Thayer*, for the plaintiff, submitted a brief.

RONAN, J. The plaintiff, a corporation engaged in the

business of cleaning overalls and other garments which it collected from and delivered to its various customers, brought this bill in equity against the defendant, a former employee who worked as a driver and collector and who was a member of a trade union with which the plaintiff had an agreement relative to the wages, hours, and other conditions of employment, to enjoin the defendant from violating an article of that agreement which in substance provided that an employee ceasing to be employed by the plaintiff for any reason would not for the period of twelve months thereafter "solicit business from any customer served by him or by any other employee of said company." The defendant appealed from a decree overruling his demurrer and from a final decree granting an injunction and damages.

After the demurrer was overruled, the bill was amended in a material aspect. Indeed, the amendment went to the essence of the plaintiff's case and supplied the only ground upon which it was granted relief. The defendant, instead of challenging the sufficiency of the bill as amended, sought and secured permission to amend his answer, and the hearing was had upon these amended pleadings. The ruling on the demurrer to the original bill, even if not well founded as the defendant contends, ceased to be of any materiality and became moot. The appeal from the interlocutory decree overruling that demurrer presents no question of law and is dismissed. *Hushion* v. *McBride*, 296 Mass. 4. *Revere* v. *Blaustein*, 315 Mass. 93.

It appears from an examination of the evidence and from the findings of the judge — no one of which can be said to be plainly wrong in so far as they go — that the defendant entered the employment of the plaintiff in 1940 and continued in such employment to September 3, 1946, when he was discharged; that during all the period of his employment the defendant was a member of a trade union that had several successive written agreements with the plaintiff governing working conditions of its members in the employ of the plaintiff, which also included the provision, already mentioned, precluding its members, after the termination

of their employment for any reason, from soliciting the plaintiff's customers; that the last written agreement was dated July 20, 1945; and by its terms expired July 20, 1946, but by agreement of the parties was extended pending negotiations for a new agreement and until a new agreement was executed; that this agreement of July 20, 1945, was in full force and effect at the time of the defendant's discharge; that after his discharge the defendant solicited customers of the plaintiff who had been served by the defendant while he was in the employ of the plaintiff; and that damage had thereby resulted to the plaintiff.

The defendant contends that the agreement of July 20, 1945, was not binding upon him for various reasons. This agreement stated that it "must be signed by the individual members of the association." This we take to mean the other employers conducting a business similar to that of the plaintiff. The agreement of July 20, 1945, with the plaintiff was not signed by such employers, but it cannot for that reason be deemed invalid because that agreement had been fully performed up to September 3, 1946, by the plaintiff, the union, and the defendant, who was familiar with all its terms and must be held to have waived the requirement of the signatures of the other laundry owners to this agreement. *Vitti* v. *Garabedian*, 264 Mass. 1. *Zarthar* v. *Saliba*, 282 Mass. 558. *Cueroni* v. *Coburnville Garage, Inc.* 315 Mass. 135. In the next place, the inference is plain that these other laundry owners had entered into similar agreements with the union, as all of them including the plaintiff and the union agreed that their written agreements, which apparently ran for a term similar to that of the plaintiff's agreement, should be considered in full force and effect pending negotiations for new agreements, and the defendant was one of the representatives of the union who participated in this arrangement with these laundry owners. The making of such a temporary arrangement was not unauthorized by the union, as the defendant contends, for the evidence was direct and positive that the union representatives had authority to make this arrangement. *DuBois* v. *Powdrell*, 271 Mass. 394. *Jackson* v. *Colonial Provision*

*Co. Inc.* 314 Mass. 177. *Ventromile* v. *Malden Electric Co.* 317 Mass. 132.

The agreement of July 20, 1945, expressly provided that it should be binding on all members of the union who were employed by the plaintiff. This agreement was made by the union in behalf of its members who were in the employ of the plaintiff, and was binding on the defendant at the time of his discharge. *Whiting Milk Co.* v. *Grondin,* 282 Mass. 41. *Members of Bakery & Confectionery Workers International Union* v. *Hall Baking Co.* 320 Mass. 286.

The agreement provided that all previous agreements between the union and the plaintiff had become null and void, and that no member of the union employed by the plaintiff should sign or make any individual agreement with the plaintiff. The evidence which the defendant offered to show that prior to entering the employment of the plaintiff he had an oral agreement with the plaintiff by which he should retain as his own personal property the patronage of the customers he then had was properly excluded as it tended to contradict the provisions of the union agreement, especially the provision preventing the defendant from soliciting customers whom he served when an employee of the plaintiff. *Western Newspaper Union* v. *Dittemore,* 264 Mass. 74. *S. F. Bowser & Co. Inc.* v. *Independent Dye House, Inc.* 276 Mass. 289. *Tupper* v. *Hancock,* 319 Mass. 105.

There is nothing in the union agreement requiring the submission of the present controversy to arbitration. Neither is the statute of frauds applicable, for the defendant was not hired for any period exceeding a year and the agreement with the union did not require the plaintiff to hire any of the union members for any definite term. *J. I. Case Co.* v. *National Labor Relations Board,* 321 U. S. 332, 335. *Yazoo & Mississippi Valley Railroad* v. *Webb,* 64 Fed. (2d) 902. *Piercy* v. *Louisville & Nashville Railway,* 198 Ky. 477. *Dooley* v. *Lehigh Valley Railroad,* 130 N. J. Eq. 75. *Amelotte* v. *Jacob Dold Packing Co.* 173 Misc. (N. Y.) 477. *Cross Mountain Coal Co.* v. *Ault,* 157 Tenn. 461.

The plaintiff and the employee could under the union

agreement terminate the employment by a week's notice, except that the plaintiff could summarily discharge an employee for "drunkenness, theft or embezzlement" and an employee discharged "for dishonesty or theft" had a right to a hearing. The plaintiff after giving such notice could request the employee not to perform any further services, and in that event the latter would be entitled to a week's wages one week after the discharge. The defendant testified that he was discharged for overcharging customers, but that this was done with the knowledge and consent of the plaintiff and for its pecuniary gain. When the plaintiff's president and treasurer began to testify concerning the reasons and the circumstances attending the discharge of the defendant, the judge observed that under the union agreement the defendant could be discharged for any reason and that the cause of the discharge was immaterial. There was no further testimony with respect to the matter. It is true that the plaintiff could discharge an employee for any reason it saw fit, but the manner in which the discharge was to be accomplished was designated by the agreement and the cause for discharge would be pertinent for, if shown to have been capricious and arbitrary or unjust and inequitable, that would be a decisive factor in determining whether the plaintiff should be granted the relief sought by the bill, which was actually one for specific performance, *Edgecomb* v. *Edmonston*, 257 Mass. 12, 18; and specific performance "is not a matter of strict and absolute right." *Economy Grocery Stores Corp.* v. *McMenamy*, 290 Mass. 549, 552.

But even if the cause for the discharge is not disclosed, the method by which it was accomplished does not appear from the record. There is no evidence that the plaintiff gave any formal notice to the defendant that his services were to terminate in a week. The lack of a formal notice in and of itself would not be of controlling significance, because the discharge on September 3, 1946, was the equivalent of such a notice and the absence of such notice would not deprive the defendant of his wages for the subsequent week and, if not paid when due, he could recover those wages in an action at law, but that would be the full measure

of recovery. *Lyon* v. *Pollard,* 20 Wall. 403. *Chevrolet Motor Co.* v. *McCullough Motor Co.* 6 Fed. (2d) 212. *All States Service Station, Inc.* v. *Standard Oil Co. of New Jersey,* 120 Fed. (2d) 714. *Shea* v. *Kerr,* 1 Pennewill (Del.) 530. *Bryant & Stratton Business College* v. *Walker,* 155 Ky. 707. *Derry* v. *Board of Education of East Saginaw,* 102 Mich. 631. *Watson* v. *Russell,* 149 N. Y. 388. *Bitterman* v. *Gluck,* 256 App. Div. (N. Y.) 336. *Freiburger* v. *Texas Co.* 216 Wis. 546. *Konski* v. *Peet,* [1915] 1 Ch. 530.

The failure to pay, if there were such failure, would constitute a breach of the union agreement. We need not decide whether the defendant would be justified in treating the breach as a rescission of the agreement because a breach may be inadequate to rescind a contract and sufficient to prevent the one who committed the breach from securing specific performance of the contract by the other party. *Banaghan* v. *Malaney,* 200 Mass. 46, 49. *Forman* v. *Gadouas,* 247 Mass. 207, 211. *Shikes* v. *Gabelnick,* 273 Mass. 201, 205. *Rayner* v. *McCabe,* 319 Mass. 311, 314. We think that an employer seeking the aid of a court of equity to enforce a provision of an agreement which restricts the employee's freedom of employment must show performance by himself of the contract. The payment of wages at the rates and time prescribed by the union agreement was an important provision of that agreement, and the failure to pay was not an inconsequential incident. Limitations on the enforcement of such contracts have been frequently stated in our decisions. *Sherman* v. *Pfefferkorn,* 241 Mass. 468. *Boston & Suburban Laundry Co.* v. *O'Reilly,* 253 Mass. 94. *Club Aluminum Co.* v. *Young,* 263 Mass. 223. *Padover* v. *Axelson,* 268 Mass. 148. *Commonwealth Laundry Co.* v. *Daggett,* 283 Mass. 79. *Woolley's Laundry, Inc.* v. *Silva,* 304 Mass. 383. It has been held that the failure to pay a discharged employee in accordance with the terms of his contract of employment will bar the employer from securing a decree for specific performance. *General Billposting Co. Ltd.* v. *Atkinson,* [1909] A. C. 118. *Measures Brothers, Ltd.* v. *Measures,* [1910] 2 Ch. 248. *Felton Beauty Supply Co. Inc.* v. *Levy,* 198 Ga. 383. The same result was reached where a

plaintiff had neglected to pay the defendant under previous contracts to render personal services. *Rice* v. *D'Arville,* 162 Mass. 559.

The case is distinguishable from those where the innocent failure of a lessee to pay the rent when due or a slight deviation by him from the terms of the lease was insufficient to require a forfeiture of the lease; and from those where the breach was so trivial that the contractual rights of the parties remained unaffected. *Sanders* v. *Bryer,* 152 Mass. 141. *Lundin* v. *Schoeffel,* 167 Mass. 465. *Massachusetts Home Missionary Society* v. *Sirianni,* 252 Mass. 352. *Rigs* v. *Sokol,* 318 Mass. 337, 344. *Tinkham* v. *Wind,* 319 Mass. 158, 161.

It is probable that neither party attached importance to the circumstances attending the discharge of the defendant. We note that the defendant's contention with reference to the payment of wages goes no farther than to state that such payment does not appear from the record. We cannot determine whether such payment was or was not made. Neither can we determine the cause for the discharge. The final decree must be reversed and the suit remanded to the Superior Court for further hearing. If it appears that the plaintiff has acted reasonably in discharging the defendant, and not for any misconduct in which the plaintiff participated, and has already paid him in accordance with the union agreement, a final decree granting injunctive relief and damages in the amount already determined is to be entered; otherwise a decree is to be entered dismissing the bill. The appeal from the interlocutory decree overruling the demurrer is dismissed.

*So ordered.*