NEW ENGLAND CANTEEN SERVICE, INC. *vs.*
DONALD T. ASHLEY
(and a companion case[1]).

Worcester. June 8, 1976. — June 3, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Contract,* Covenant against competition. *Covenant Against Competition. Practice, Civil,* Review of interlocutory action, Appeal.

In an action to enforce a covenant not to compete, evidence warranted a finding that the plaintiff did not have a goodwill interest which could be harmed by denying enforcement of the covenant. [673-676]

In the absence of a determination of the defendants' damages on their counterclaim, a decision relative to each defendant's right to recover on the counterclaim was interlocutory in nature and not appealable. [676-678]

CIVIL ACTIONS commenced in the Superior Court on November 26, 1975.

The cases were heard by *Meagher, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*David A. Talman* for the plaintiff.
*Robert B. Shumway* for the defendants.

LIACOS, J. The plaintiff appeals from a judgment of the Superior Court dismissing a complaint in each case wherein the plaintiff sought injunctive relief and damages against the defendant therein. The plaintiff claimed entitlement in each case to such relief on the basis of a non-competition covenant contained in an agreement between the plaintiff and the defendant which it claimed the defendant had violated. The trial judge, after hearing, dismissed the plaintiff's complaint in each case, as well as a

---

[1] New England Canteen Service, Inc. *vs.* Clarence J. Chenevert, Jr.

counterclaim asserted by each defendant except for so much of that claim as entitled the defendant to the return of certain moneys which he had paid to the plaintiff in the form of so called franchise fees. The judge ordered an accounting for such fees and referred the matter of accounting to a master. The plaintiff sought review in the Appeals Court prior to any action by the master and we transferred the case here.

The plaintiff is a corporation engaged in the food service business in Worcester County. At a plant located in North Grafton the plaintiff prepares food items such as sandwiches and coffee which it furnishes to drivers who, in turn, sell these goods at various establishments at which they make daily stops.

On September 7, 1973, the plaintiff entered into similar written agreements with the defendants, Ashley and Chenevert. In the agreements the plaintiff agreed to sell, and the defendants to purchase, food items prepared by the plaintiff. The defendants in turn were to sell these goods from a truck bearing the plaintiff's insignia at prices determined by the plaintiff. The defendants further agreed to sell at locations furnished by the plaintiff, as well as at those developed by the defendants and approved by the plaintiff. Most germane to the controversy was the clause in each contract set forth in the margin[2] which purported

---

[2] "9. The said party of the second part [the defendant] hereby covenants and agrees to and with New England, that upon the termination of this agreement or extension thereof, whether such termination takes place in accordance with the provisions of this agreement, or for any reasons whatsoever whether with or without cause, the party of the second part agrees that he will not thereafter, reveal the business methods of the said New England or any of the business secrets of New England to anyone at any time and that he will not practice or make use of them himself, nor will he enter into, engage in, or be connected with any business selling or supplying general food and refreshments in any form to the customers with whom he has had dealings as party of the second part of New England, either directly or indirectly, nor will he be connected with any business of selling or supplying general food and equipment to any person, corporation or partnership in the direct vicinity of the party of the first parts customers, (meaning a radius of fifty (50) miles of the City of Worcester) trade or business either directly or indirectly in his own behalf or for any person, per-

New England Canteen Service, Inc. *v.* Ashley.

to put the defendant under certain competitive restraints in the event of the termination of the relationship.

In addition to the duties and obligations set forth in the terms of each contract, which the judge found to be complete on its face, the plaintiff required, and the defendants paid, $150 a month as a "franchise fee" even though neither agreement required such payment. As a result of the continued enforcement of this additional requirement, as well as a rise in the price of goods sold, both defendants terminated their relationship with the plaintiff on November 19, 1975. Each proceeded to go about the same course of business selling food items, purchased from alternative sources, at many, if not all, of the stops at which each sold during the course of the relationship with the plaintiff. It was as a result of these later actions that the plaintiff instituted these proceedings for enforcement of the contractual covenant.

In dismissing the plaintiff's complaints, the judge found that there were no trade secrets or business methods unique to the business of the plaintiff involved and that "[w]hatever good will exists [was] generated by the defendant." He ruled that the plaintiff had violated the agreement in each case (a) in that it failed to furnish to each defendant the management and supervisory assistance provided for by the agreement, and (b) by collection of a so called franchise fee "extra to the terms of the agreement" which was complete on its face. Further, the judge ruled that the covenant contained in each agreement between the parties was too broad in both time and geographical area to be enforceable in equity consonant with public policy.

1. "Employee covenants not to compete generally are

sons, firm or corporation, and the party of the second part further agrees that he will not go into or engage in the general food and refreshment distributing business or by association with a business engaged in the general food or refreshment distribution in the vicinity of the party of the first parts customers, trade or business for a period of eighteen (18) months from the date of his leaving the said New England within a radius of fifty (50) miles of the City of Worcester."

enforceable only to the extent that they are necessary to protect the legitimate business interests of the employer." *Marine Contractors Co.* v. *Hurley*, 365 Mass. 280, 287 (1974). The standards of reasonableness and the interests which may be protected consonant with public policy were explored in great detail in both *Marine Contractors Co.* v. *Hurley, supra,* and *All Stainless, Inc.* v. *Colby*, 364 Mass. 773 (1974), and thus the extended discussion of those standards need not be repeated here.

It is sufficient to state that the interests which may be protected have fallen into three generic categories: (1) trade secrets, *Analogic Corp.* v. *Data Translation, Inc.*, 371 Mass. 643 (1976); cf. *All Stainless, Inc.* v. *Colby, supra;* (2) confidential data, e.g., *Novelty Bias Binding Co.* v. *Shevrin*, 342 Mass. 714, 717-718 (1961), and *Walker Coal & Ice Co.* v. *Westerman*, 263 Mass. 235, 239 (1928); and (3) good will, e.g., *New England Tree Expert Co.* v. *Russell*, 306 Mass. 504, 510-511 (1940), and *Sherman* v. *Pfefferkorn*, 241 Mass. 468 (1922). If any or all of these interests are present in a given case in which a noncompetitive covenant is part of a contractual agreement, then in the absence of equitable factors which would militate against enforcement, see e.g., *Economy Grocery Stores Corp.* v. *McMenamy*, 290 Mass. 549 (1935), a court of equity will not deny enforcement of a reasonable covenant.

It is plain from both the complaint and the findings and rulings of the judge in each case that this is not a case involving either trade secrets or confidential data. What is at issue is whether the plaintiff has generated a goodwill interest which could be harmed by denying enforcement of the covenant. As previously stated, the judge held that this factor was not present, and we may not reverse that finding unless the facts on which the conclusion was based are clearly erroneous, Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), or if the findings or conclusions are tainted by an error of law. *Blackwell* v. *E.M. Helides, Jr., Inc.*, 368 Mass. 225, 226 (1975). *Willett* v. *Willett*, 333 Mass. 323, 324 (1955). *Lowell Bar Ass'n* v. *Loeb*, 315 Mass. 176, 178 (1943).

We note that the plaintiff asserts a number of errors to have been made by the judge but fails in its brief to assert error as to the finding of lack of good will except by reference to certain pages in the transcript of the testimony. It is arguable that such an approach is not sufficient to raise the issue before this court. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We pass this point, however, and consider the plaintiff's brief as raising the claim that the subsidiary finding of the judge on lack of good will is wholly unsupported by the evidence.[3] We have examined the record and transcript in that light.

In deciding whether a judge's subsidiary finding of fact is clearly erroneous, it must be emphasized that it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence. *Oberg* v. *Burke,* 345 Mass. 596, 598 (1963). Thus, a finding of fact by the trial judge will not be deemed "clearly erroneous" unless the reviewing court on the entire evidence is left with the firm conviction that a mistake has been committed. *Marlow* v. *New Bedford,* 369 Mass. 501, 508 (1976), citing *United States* v. *United States Gypsum Co.,* 333 U.S. 364, 395 (1948). See *Building Inspector of Lancaster* v. *Sanderson, ante,* 157 (1977).

Our review of this record leaves us with no such firm conviction. The evidence warrants the finding made by the judge.

Where the record fails to show that the plaintiff has carried its burden of persuasion as to the existence of a valid good will interest, the plaintiff has failed to establish the threshold requirement to support a request for injunctive relief. *New England Tree Expert Co.* v. *Russell, supra* at 509. Suits like the present, to enforce a negative covenant, are in reality petitions for specific performance addressed to the sound discretion of the judge. *Economy*

---

[3] The plaintiff, even by a generous reading of its brief, does not challenge the legal standard used on the good will issue by the judge. Thus, we do not address that issue.

*Grocery Stores Corp.* v. *McMenamy, supra* at 552. Absent a showing of good will or other similar interest, the plaintiff cannot prevail. See *Slade Gorton & Co.* v. *O'Neil,* 355 Mass. 4 (1968).

Thus, we hold that the facts on the record justified the conclusion that the defendants' actions, after the termination of their relationship with the employer, did not interfere with any goodwill interest legally attributable to the plaintiff. On the state of the record before us, the plaintiff's purpose in attempting to enforce the covenant is to protect itself from ordinary competition. This it cannot do. *All Stainless, Inc.* v. *Colby, supra. Sherman* v. *Pfefferkorn, supra.* Accordingly, we conclude that the judge acted correctly in dismissing the plaintiff's complaints.

2. The plaintiff asserts error in the judge's ruling (a) that the agreements were void and unenforceable "as being against public policy as being too broad both in geographical area and in time"; (b) that "[t]he plaintiff's failure to furnish management and supervisory assistance represents a material breach of the subject agreement"; and (c) that "[t]he collection of a franchise fee extra to the terms of the agreement . . . complete upon its face, is a breach of said agreement." The plaintiff claims other errors which we deem to be without merit. As to the three errors listed here, we find it unnecessary to reach these questions for the reason that while they might be viewed as alternative grounds for the decision of the judge, the propriety of such rulings is not in issue under the view we have taken. We note, however, that even if we were to assume a business interest subject to protection, a finding of material breach, if warranted, would serve as a basis to deny injunctive relief. *National Overall Dry Cleaning Co.* v. *Yavner,* 321 Mass. 434 (1947). *Rayner* v. *McCabe,* 319 Mass. 311 (1946). *Economy Grocery Stores Corp.* v. *McMenamy,* 290 Mass. 549 (1935).

3. As noted above, the judge caused a "judgment" to be entered in each case dismissing the plaintiff's complaint as well as each defendant's counterclaim "except as to whatever sum remains due after a full accounting of all monies

received by the plaintiff from the defendant" (the franchise fees). The judge referred this latter aspect of each case to a master.[4] The dismissal of the plaintiff's complaints, being a final disposition of all issues raised, *Sears, Roebuck & Co.* v. *Mackey,* 351 U.S. 427 (1956), stands in an entirely different posture than does the judge's action on the counterclaims. The judgments as to the plaintiff's claims were final and appealable. The "judgments" as to the defendants' counterclaims were neither final nor appealable.

A decision of the issue of liability which excludes damages is normally not a final decision which is ripe for appellate review. *Haverhill Gazette Co.* v. *Union Leader Corp.,* 333 F.2d 798, 803 (1st Cir.), cert. denied, 379 U.S. 931 (1964). As such, the decision relative to each defendant's recovery on the counterclaim is, in the absence of a determination of damages, interlocutory in nature and not ripe for full review until all issues are resolved at the trial level. See *Pollack* v. *Kelly, ante,* 469 (1977).

It is arguable that the entire case is not ripe for review. Massachusetts Rules of Civil Procedure 54 (b), 365 Mass. 820 (1974), allows the entry of judgment on fewer than all claims "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The plaintiff's claims and each defendant's counterclaim are clearly separate claims under the rule, *Cold Metal Process Co.* v. *United Eng'r & Foundry Co.,* 351 U.S. 445, 446 (1956), and thus are amenable to the application of this provision. While the express determination required by rule 54 (b) is not apparent on the record, it is fair to conclude in so far as the dismissal of the plaintiff's claims is concerned, that the judge made the determinations required by the rule. In the future we

---

[4] It should be noted that we disagree with the plaintiff's argument that the order for an accounting of the fees paid is inconsistent with the ruling that the defendants had not adequately proved damages. In his answer each defendant requested punitive damages and we believe the judge meant that they had not proved that those kind of damages were warranted.

678                                       372 Mass. 678

New England Telephone & Telegraph Co. *v.* Department of Pub. Utils.

think that the purpose of the rule, which is aimed inter alia at informing the parties of the time at which they may properly seek appellate review, 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2654 (1973), requires that this determination appear on the record and that the parties be so informed. See generally J.W. Smith & H.B. Zobel, Rules Practice §§ 54.5, 54.6 (1977).

4. The judgments dismissing the plaintiff's complaints are affirmed. The appeals from the purported judgment as to each defendant's counterclaim are dismissed and the disposition of the counterclaims may proceed to final determination.

*So ordered.*