*115 Dissenting Opinion
■ Donovan, J.
dissenting:
The communication breakdown here was apparently seen by the trial judge as either a product of both parties’ approach to one another or insufficiently egregious to rise to the level of an unfair or deceptive act by defendant. Where there is some evidence, supported by reasonable inferences, sufficient to come out either way on the issue, the determination of the trial judge should be given great weight. In the circumstances here presented I find neither an error of law nor an abuse of discretion and would uphold the decision of the trial judge regarding the plaintiffs Count I alleging M.G.L. c. 93A violations. I, therefore, dissent to Part I.A. of the majority opinion.
There is no question that defendant Superior Carpet, Inc. (“Superior”) is accountable to plaintiff O’Keeffe for the lost rug. The majority appears to find that as a matter of law, or, as a matter of fact so plain that it would be an abuse of discretion not to so find, that defendant Superior acted unfairly in responding to O’Keeffe’s rightful claim. In that regard the majority focuses almost entirely on the failure of the defendant to communicate with plaintiff. I would focus on the matter in its entirety, as did the trial judge, and decide the case upon all the circumstances.
The trial judge was warranted in finding that plaintiff O’Keeffe’s initial approach to defendant Santacroce (for Superior) set a negative tone to the parties’ relationship. Santacroce had recently been beset by internal strife with a co-owner of Superior (R. 4). Now as Santacroce sought to regain some equilibrium he is approached by plaintiff O’Keeffe who demands two rugs of which Santacroce had no prior knowledge (R.4). Upon a search with O’Keeffe one rug is found but has a tag indicating ownership in another (R.4). Santacroce reasonably refuses to release the rug until the ownership can be determined. However, apparently not satisfied with this, plaintiff returns the very next day demanding again that the rug be returned (R.4). At that point, February 10,1983, communication clearly broke down between the parties (R. 5). A reasonable review of the trial court’s findings suggests that both parties contributed to this breakdown (R.5). Communication was not re-established between the parties until October of 1983, some eight months later (R.6).
Were there no additional facts than these, I would agree with the majority. However, during the period of silence between the parties defendant Santa-croce was not idle. On February 11,1983 Superior returned the remaining rug to O’Keeffe (R.5). Between February and June of 1983 Santacroce made a comprehensive investigation of the circumstances surrounding the disappearance of O’Keeffe’s rug (R. 5). Upon concluding that the rug would not be found in June, 1983 (R. 5), Superior retained expert assistance in July of 1983 to identify a suitable replacement for the rug (R. 6).
Presumably the trial judge found that these efforts were sufficiently sincere to mitigate the lack of communication. While the maj ority discounts it, the trial judge also was quite aware of the parties’ level of sophistication. In this instance the fact that in February of 1983 O’Keeffe was aware that the rug was very probably lost to him (R. 5), certainly diminishes the importance of Superior’s communicating that fact to him, so long as Superior continued to take appropriate steps to make good on O’Keeffe’s loss.
Furthermore, the sophistication of Superior itself should not be overlooked. Refunding a $4,000.00 loss takes an increasingly greater significance the smaller the company. It is also reasonable to infer that a small company is not accustomed to dealing with such losses and would not be expected to have *116 sophisticated or well oiled procedures in place to efficiently deal with such losses. For this reason, analogy to Antonelli v. Delta Airlines, Inc., 1986 Mass. App. Div. 75, is a hard one to make and, therefore, a distinction should be made between it and the present case.
An appellate tribunal must have a firm conviction that a mistake was committed below, before tampering with the determination of the trial judge. See, New England Canteen Service, Inc. v. Ashley, 372 Mass. 671, 675 (1977). Determinations concerning what is unfair, within certain broad guidelines, is generally left to the discretion of the trial judge. See, Commonwealth v. DeCotis, 366 Mass. 234 (1974). Here the judge found no unfairness sufficient to invoke a violation of Chapter 93A. While another judge might have acted differently on these facts at a trial, without more, there is no good reason to reverse here on appeal. I would affirm.
APPENDIX “A”
COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, ss. Boston Municipal Court
CIVIL DIVISION
Docket No. 072309
****‡**********
KEVIN 0. O’KEEFFE Plaintiff
v. FINDINGS
SUPERIOR CARPET, INC.,
PAUL SANTACROSE Defendant
Per order of the court, the previous judgment entered in this matter was opened and additional testimony taken by the court. This opinion represents the court’s final judgment, and it is the intent of the court that the findings expressed herein supersede any previous findings entered by the court.
Plaintiffs complaint asserts three counts of recovery: breach of contract, conversion, and violations of M.G.L. c. 93 §§ 2 and 9. As to each count of plaintiff’s complaint, the Defendants entered a general denial. Upon consideration of all the credible evidence, the court makes the following findings of fact and enters judgment accordingly.
On or about November 26,1979 during a telephone conversation initiated by the plaintiff it was agreed that the defendant Superior Carpet (Superior) would clean and store two oriental rugs for the plaintiff, in exchange for which plaintiff would pay Superior a reasonable fee. Estimates were given for cleaning, and storage was quoted as approximately 9 to 10 dollars per month, Within hours of this telephone conversation, Superior sent a pick up truck to plaintiffs home for the rugs. At his request, plaintiff was given a handwritten receipt wherein the operator of the truck acknowledged receipt of the rugs and indicated they were being taken for cleaning and storage (see Exhibit #3).
Several days after acceptance of the rugs, Superior sent and plaintiff received a copy of an invoice numbered N001800 further acknowledging receipt of the rugs and specifying charges consistent with estimates quoted during the aforementioned telephone conversation. The back side of the invoice sought to specify various conditions under which Superior accepted the rugs and to limit Superior’s liability in the event the rugs were lost or damaged. The invoice was not signed by plaintiff or an agent of Superior (see Exhibit #15).
*117 On or about February 5, 1980, plaintiff paid Superior the sum of $85.00 for cleaning (see Exhibit #5), and on August 11, 1980, plaintiff paid Superior $72.00 for storage charges accrued on the rugs through August 26, 1980. Storage charges were billed at the rate of $9.00 per month (see Exhibit #8).
In June of 1981 plaintiff visited Superior to inquire into why storage bills were no longer beingsenttohim;he was told by a secretary at Superior that his rugs were still in storage and final storage charges could be paid once delivery was requested.
The operation of Superior was adversely affected during 1981 when a dispute between defendant Santacrose and Daniel Hamway, the one time majority stockholder, resulted in litigation and the ultimate transfer of majority ownership to defendant Santacrose.
On or about February 9,1983 plaintiff went to the premises of Superior and requested of defendant Santacrose the delivery of the two rugs. Defendant Santacrose seemed surprised and did not believe they were in possession of the rugs. Defendant Santacrose had no involvement with plaintiffs account prior to February 9,1983. Plaintiff accompanied defendant Santacrose to the rug storage area and located the larger of the two rugs, but the tag on this rug indicated that the rug belonged to someone else. The plaintiff went home for documents which might help prove his ownership of the rugs and facilitate their location. Plaintiff returned the same day and showed defendant Santacrose photographs of both rugs. They could not locate the second rug. Defendant Santacrose would not release the rug plaintiff identified as his and stated he needed some time to verify ownership and locate the missing rug. Plaintiff left defendant Santacrose a photograph of the rug he could not locate (see Exhibit #9). The following day, February 10, 1983, plaintiff returned to Superior and further requested the return of his rugs. Defendant Santacrose indicated that circumstances had not changed since plaintiffs visit of the previous day; that he was trying to run a rather large business, and he needed more time to investigate the matter. Both parties were angry, and exchanged volleys regarding the value of the rugs, and their respective legal positions. Plaintiff left the premises dissatisfied. Plaintiff surmised that it was unlikely that he would ever recover the missing rug.
On about February 11, 1983, defendant Santacrose returned the larger of the two rugs to plaintiff. Plaintiff accepted delivery and signed a letter acknowledging receipt of the larger rug (see Exhibit #10). Plaintiff was not requested to pay any additional storage charges at the time of delivery; neither party mentioned the second or missing rug.
Between February 11, 1983 and June of 1983, defendant Santacrose reviewed the inventory of Superior, spoke with employees, reviewed office documentation, and personally searched the premises of Superior all in search of the missing rug. In June of 1983 defendant concluded that he would not be able to locate the missing rug, speculating that the missing rug had been stolen and its whereabouts unknown. Defendant Santacrose does not know what happened to the missing rug. Defendant Santacrose did everything reasonable and possible to locate the missing rug. The unexplained circumstances surrounding the missing rug; the length of time the rugs were in storage; defendant Santacrose’s lack of involvement with plaintiff’s account prior to February 9, 1983; and the disruption in the operation of Superior caused by the change in ownership were all contributing factors in the amount of time required by defendants to conclude that they would not be successful in locating the missing rug. Defendant Santacrose failed Lo communicate his *118 inability to locate the missing-rug to the plaintiff.
On or about June 11,1983 plaintiff wrote defendant a letter expressing his dissatisfaction with the manner in which the defendants were responding to the matter of the missing rug, stated the value of his rug to be $4,000.00, and expressed willingness to accept a comparable rug of equal value. Plaintiff further threatened legal action if defendants were not forthcoming with appropriate satisfaction by June 30, 1983 (see Exhibit #11). Defendant did not respond to plaintiffs letter of June 11, 1983. Plaintiff did not take legal action as threatened, but made several unsuccessful efforts to reach defendant Santacrose by telephone between June and September 1983. Finally, in October 1983, plaintiff spoke with defendant Santacrose by telephone and was told that the missing rug could not be located. Prior to this conversation, approximately July 1983, defendant Santacrose retained the assistance of Richard A. Kirkjian of Brooks, Gill & Co., Boston, in identifying a suitable replacement for the missing rug.
Eventually, through Mr. Kirkjian and Koko Boodakian, an independent appraiser for the plaintiff, it was agreed that plaintiff would be permitted to select a comparable replacement rug from Brooks, Gill & Co.
In February or March 1984 plaintiff selected a rug at Brooks, Gill & Co. as a replacement for the missing rug. However, before agreeing to deliver the replacement rug, defendant Santacrose requested the plaintiff pay $500.00 for storage and cleaning which he alleged were due for both rugs. Plaintiff refused to pay any additional amount for storage or cleaning. The replacement rug was not delivered, and discussions between the parties terminated.
The fair market value of the missing rug is $4,000.00. Brooks, Gill & Co. had agreed to sell the rug plaintiff selected as a replacement to the defendant for $2,800.00.
By letter dated May 1,1984, plaintiff through counsel notified the defendants that plaintiff considered their conduct to be a knowing and willful violation of the Massachusetts Consumer Protection Act and demanded various elements of relief. Said letter satisfied all requirements of a demand letter within meaning of Chapter 93A. Defendants never made a response to plaintiffs demand letter (see Exhibit #12).
Plaintiff commenced this action on June 18,1984.

COUNT I - CONSUMER PROTECTION ACT

The defendants did not commit any unfair or deceptive act within the meaning of M.G.L. c. 93A, Sections 2 and 9.
The court finds no deliberate or willful misconduct by the defendants intended to deprive plaintiff of his rugs or the benefit of his bargain to have his rugs cleaned and stored.
The unexplained disappearance of plaintiffs rug from defendant’s premises is not in itself an unfair or deceptive act within the meaning of M.G.L.c. 93A §§2 and 9.
Defendant’s behavior subsequent to plaintiffs demand that his rugs be returned was not so unreasonable as to constitute an unfair or deceptive act within the meaning of M.G.L.c. 93, §§2 and 9.Defendants’ need, at the time of plaintiffs initial demand for the rugs, to verify ownership and investigate the circumstance of the missing rug was warranted. The rug returned within two days of demand was returned as promptly as possible under the circumstances. Defendants were not in possession of the missing rug and could not return it.
Plaintiff argues that defendant Santacrose’s failure to notify him for more *119 than eight (8) months regarding the status of the missing rug should go far in establishing a violation of Chapter 93A. However, the court thinks it significant that as early as February, 1983 plaintiff actually formulated the belief that it was unlikely that the missing rug would be located. Also, plaintiff trial demeanor, advanced education, and general socio-economic status are all inconsistent with plaintiffs trial position that he was merely a naive consumer without suspicion regarding the status of the missing rug, and for nearly eight months he anxiously awaited for defendant to return the missing rug to him only to discover eight months later that the rug could not be located.
Furthermore, plaintiff’s letter to the defendants dated June 11,1983 and marked Exhibit #11 evidenced plaintiffs awareness of his legal recourse, and on at least one occasion between February and October 1983, plaintiff consulted with a lawyer. More importantly, this is not a situation where plaintiff was unfairly induced into a detrimental course of conduct by the defendants. Defendants did nothing between February and October of 1983 to induce plaintiff to forebear from pursuing whatever legal remedy available to him. On February 9,1983 and at all times thereafter plaintiff was at liberty to pursue whatever remedy at law he thought appropriate. Plaintiffs unilateral decision to do otherwise, in the absence of some bad faith conduct by the defendants, cannot now serve as a basis for relief under Chapter 93A. In addition, the injury suffered by the plaintiff was the loss of his rug. A loss appropriately redressed by an action in contract. There is not a nexus between defendants’ belated notice to the plaintiff regarding defendants’ inability to locate the missing rug and the actual injury suffered by the plaintiff, the loss of his rug. The unexplained disappearance of plaintiffs rug is not related to defendants’ failure to communicate with plaintiff between February and October of 1983. Plaintiff offered no credible evidence of an injury other than the loss of his rug. Thus, even if the court were inclined to find that such failure to communicate constituted an unfair or deceptive act within the meaning of Chapter 93A, plaintiff has failed to prove that he suffered any articulable injury as a result of said conduct.
Furthermore, the court is satisfied that subsequent to defendants’ establishment that the second rug could not be found and the communication of this fact to the plaintiff in October 1983, both plaintiff and defendants elected to begin settlement discussions. These settlement discussions broke down only when defendants requested plaintiff to pay service charges allegedly accrued for storage and cleaning on both the returned and missing rugs in the amount of $500.00. Plaintiff denied owing and refused to pay any additional charges. The aggregate amount of storage and cleaning charges which were to accrue were not specified in the contract. However, if the court were to infer that the cleaning bill paid by plaintiff in February of 1980 constituted a final bill for cleaning, plaintiff was aware that storage charges accrued on a monthly basis and that he had paid storage charges only through August of 1980. Plaintiff received confirmation from defendant’s secretary in June of 1981 that both rugs were still in storage and that the final bill for storage could be paid once plaintiff requested delivery. Therefore, plaintiff owed defendants for nearly three years of storage for the rug returned to plaintiff, and, assuming, favorably to the plaintiff, the missing rug disappeared immediately after defendants’ secretary confirmed that it was in storage in June on 1981, plaintiff also owed defendants for approximately one year of storage on the missing rug. Defendant Santacrose’s request that plaintiff pay an additional charge of $500.00 may have been incorrect in amount, but plaintiffs refusal to *120 pay any additional charges was equally incorrect and did nothing to advance the already substantial effort both parties had devoted to good faith discussions. The evidence does not support a conclusion that the defendants’ conduct was the sole or even primary cause for the breakdown in discussions between the parties, and the court is not persuaded that defendants’ conduct during these discussions constituted an unfair or deceptive act within the meaning of M.G.L. c.93A§ 2.The fact that the parties were not able to settle their differences is not a per se violation of Chapter 93A or proof that the defendants were acting in bad faith.

COUNT II — CONVERSION

The court is not persuaded that defendants’ action taken as a whole constituted the tort of conversion. Defendant Santacrose’s failure to return both rugs on February 9,1983 was not an effort by defendant to interfere with plaintiffs right to ownership or control, but a legitimate effort by the defendant Santacrose to establish plaintiffs right of ownership and the whereabouts of the missing rug. The tag on the rug identified by plaintiff indicated someone other than plaintiff owned this rug and the second rug could not be located. Defendant was reasonable and prudent in requiring additional time to investigate the matter. Defendant’s return of the second rug two days after demand was reasonable under the circumstances and no act of conversion was committed. It was clear from defendant Santacrose’s trial testimony that he could not determine the circumstances surrounding the disappearance of the second rug; his initial assertion that it was stolen, though likely, was mere conjecture. Defendant did everything reasonable to locate the missing rug. On the date of plaintiffs initial demand for the rugs and all times thereafter, defendant was not in possession of the missing rug and could not satisfy plaintiffs demand for it. Magaw v. Beals, 272 Mass. 334(1930); DAloisiov. Morton, Inc., 26 Mass. App. Dec. 36(1963); Broum v. Waterman, 64 Mass. 117(1852).
COUNT III — BREACH OF CONTRACT
The contract between the plaintiff and Superior was oral. The written invoice and the limitation of liability provisions contained thereon and received by the plaintiff several days later, was not a part of the contract and are not binding on the plaintiff. The rather substantial provisions of the invoice purporting to limit defendants’ liability were not discussed between the parties; and at the formation of the contract the parties did not agree to future modifications of the contract. Although plaintiff acknowledged receipt of the invoice, there was no evidence from which the court might infer that plaintiff accepted, acquiesed in or otherwise adopted the provision of the invoice as part of its bargain with Superior. Wainwright v. Mass. Storage Warehouse Co., 219 Mass. 249(1914).
Superior’s failure to return both of plaintiffs rugs on demand as agreed constitute a breach of contract, and the plaintiff is entitled to recover from the defendant Superior Carpet, Inc., the fair market value of the missing rug, the sum of $4,000.00. Defendant Santacrose was not a party to the contract and is not liable to the plaintiff in contract.
R ULINGS ON DEFENDANTS ’ REQ UESTS FOR R ULINGS OFLAW
Defendants’ requests for rulings of law as they relate to counts I and II are considered waived.
1. Denied.
10. Denied. Inconsistent with facts found. See findings.
*121 11. Denied.
12. Denied. Inconsistent with facts found. See findings.
13. Denied. Inconsistent with facts found. See findings.
14. Denied. Inconsistent with facts found. See findings.
15. Denied.
17. Denied. Contrary to previous rulings of court permitting plaintiff to amend his complaint pursuant to M.R.C.P. Rule 15(b).
18. Denied.
21. Denied. Defendants’ offer of settlement incorporating the terms outlined in this request were made after the commencement of litigation and filed with the court on the first day of trial. Plaintiff was not obligated to accept said offer no matter its terms.
22. Allowed, but immaterial to facts found. See ruling #21 and facts stated therein.
RULING ON DEFENDANTS’ ADDITIONAL REQUEST FOR RULINGS OF LAW
3.Denied. Inconsistent with facts found.

RULINGS ON PLAINTIFF’S REQUEST FOR RULINGS OFLAW

1. Denied. See findings.
2. No ruling required as request calls for a finding of fact. However, see findings.
3. This request is not applicable to the specific issues before the court. It contains mixed questions of law and fact, and lacks requisite specification for correct disposition by the court. Plaintiffs refusal to pay additional storage charges was considered only in the context of that portion of plaintiffs complaint alleging violation of Chapter 93A, and the reasonableness of plaintiffs conduct during settlement discussions between the parties. See findings.
4. No ruling required as request calls for a finding of fact. See findings wherein the court found facts consistent with this request.
5. No ruling required as request calls for a finding of fact. However, see findings.
6. Allowed, but see findings for specific circumstances of breach.
7. Denied. See findings.
8. Denied. See findings.
9. Denied.
10. Allowed, but immaterial to facts found. See findings, and ruling #9.
11. Allowed.
12. Allowed.
13. Denied. Inconsistent with facts found. See findings.
14. Denied. See findings.
15. Denied.
16. Denied.
17. Allowed as to count III of plaintiffs complaint.
Charles R. Johnson, Associate Justice
APPENDIX “B”
“10. Plaintiff is bound by the conditions on the reverse side of the receipt for the cleaning and storage of the rugs.
“11. Plaintiff had admitted that the conditions of the contract were applicable to him by his reference to his February 11, 1983 letter acknowledging receipt of one of the rugs under Invoice 1800 in storage with Superior since November 26, 1979.
*122 “12. Defendant has the right under the storage receipt to sell both rugs on or after May 17,1980, without notice to plaintiff.
“13. The plaintiff had the option under the storage agreement to declare a greater value for the rug than the $50 limitation or liablity expressed in the agreement. If plaintiff did not make such declaration, he is bound by the $50 limitation.
“14. Whether or not defendant was negligent in the storage of the rugs is irrelevant on the question of damages under the storage contract and the limitation of liability clause therein.
“15. As a matter of law, the plaintiff cannot pay storage or cleaning charges under contract 1800 and controvert all other provisions of the agreement for storage.”