Fremont-Smith, J.
The plaintiff, Nobelpharma USA, Inc., seeks to enjoin its former president and chief executive officer, defendant William J. Ryan (“Ryan”) from working for plaintiffs competitor, defendant The Straumann Company (“Straumann”), in alleged violation of a covenant not to compete. For the following reasons, plaintiffs motion for a preliminary injunction is denied.
BACKGROUND
Nobelpharma USA markets and sells dental implant products in the continental United States under the trademark “Branemark System." Ryan was hired as Executive Vice President of Nobelpharma USA in April 1987. At that time, he signed a Non-Competition, Confidentiality and Development Agreement, the relevant portion of which provides as follows:
[Ijn view of the unique nature of the business of Nobelpharma and of the need of Nobelpharma to maintain its competitive position in the industry through the protection of its established good will, trade secrets, and proprietary information, I agree that for a period of two years following the termination of my employment for any reason, I shall not, directly or indirectly, engage in, own an interest in, be employed by, consult for or advise any person or entity which engages in any business or activity that is in competition with the business of Nobelpharma. I further agree that for a period of two years after termination of employment I shall not solicit or assist in the soliciting of any other employee of or consultant or advisor to Nobelpharma to leave employment with Nobelpharma.
Ryan became president and chief executive officer of Nobelpharma USA in December 1987 at which time he and Nobelpharma USA signed a new employment agreement (the “Nobelpharma Agreement”). Under the Nobelpharma Agreement, the previous Non-competition Agreement remained in effect and Ryan promised to comply with the following additional covenant not to compete:
During a period of two years after termination of his employment with the Company hereunder for any reason Ryan shall not, directly or indirectly, (i) within the continental United States whether for compensation or not, own, manage, operate, control, be employed by, serve as a consultant to or otherwise participate in directly or indirectly, any business which is competitive with the business now or during the term of his employment hereunder conducted by the Company or any corporation or other entity controlling, controlled by or under common control with the Company: (ii) directly or indirectly solicit or accept the business of any customers of the Company for business enterprise which is competitive with the business of the Company or (iii) directly or indirectly hire, induce or attempt to induce any present or future employee of the Company to leave its employ.
Ryan was terminated from his employment at Nobelpharma USA without cause on August 8, 1991. For approximately a year, Ryan sought similar employment in other areas of the health care industry but found no suitable position. On November 11, 1992, Ryan accepted a position as president of Implant Innovations, Inc. (“Implant"), a Nobelpharma USA competitor. Prior to the hiring, Ryan and Implant attempted without success to negotiate an agreement with Nobelpharma USA that would have allowed Ryan to work for Implant while preserving Nobelpharma USA’s interests. On November 1, 1992, Ryan and Implant filed a complaint for declaratory judgment in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida seeking to establish Ryan’s right to work for Implant. Nobelpharma USA asserted counterclaims for injunctive relief and tortious interference with their contractual rights. Twice the Florida court denied Nobelpharma USA’s petition for temporary injunctive relief, first on Decern- *48 ber 10, 1992 and again on March 25, 1993. Ryan left Implant in May 1993 and began employment as president of Straumann, another Nobelpharma USA competitor.
Ryan has not had access to confidential or proprietary information since he was fired from Nobelpharma USA two years ago. Since leaving Nobelpharma USA, Ryan states that he has not solicited business from Nobelpharma USA customers on behalf of Implant or Straumann. Upon hiring Ryan, Straumann conducted a general mailing to its customers announcing Ryan’s employment. At least one Nobelpharma USA customer, a Dr. Balshi, received the announcement. Nobelpharma USA contends that Ryan has engaged in indirect solicitation of its customers by informing them of his change of employment.
DISCUSSION
“In evaluating a request for preliminary relief the court must first evaluate, in combination, the moving party’s claim of injury and its chance of success on the merits. If the failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. The raw amount of conceivable irreparable harm which each party may suffer does not matter; rather, the court must evaluate the risk of such harm in light of the party’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980); Planned Parenthood League of Mass. v. Operation Rescue, 406 Mass. 701, 710 (1990).
A covenant restricting competition in an employment agreement is to be enforced only to the extent that it is reasonable in time and space, necessary to protect legitimate interests, and not an obstruction of the public interest. Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 498 (1986). See Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 287 (1974). Employer interests which may be protected have fallen into three generic categories; (1) trade secrets; (2) confidential information; and, (3) the good will the employer has acquired through dealings with his customers. New England Canteen Services, Inc. v. Ashley, 372 Mass. 671, 674 (1977). The burden of persuasion as to the existence of such legitimate business interests is on the plaintiff. Id.
Nobelpharma USA conceded at argument that it has no trade secret or proprietary information requiring protection. What is at issue is whether plaintiff possesses a good will interest which could be irreparably harmed by denying enforcement of the covenant at this preliminary stage of the proceedings. The significance of good will to this type of business is evident. Nobelpharma USA’s customers are repeat accounts, dentists trained in the dental implant system sold by Nobelpharma USA. While the parties dispute the exact variety of duties Ryan performed as president of the company, it is undisputed that during his tenure, Ryan generated a significant amount of customer good will for Nobelpharma USA. Ryan’s new position at Straumann, a Nobelpharma USA competitor, is likely to put him in a position to exploit customer contacts made while employed by the plaintiff.' However, the mere possibility of solicitation is not enough to support a preliminary injunction. Nobelpharma USA has failed to present convincing evidence of the risk of irreparable harm. Nobelpharma USA has not contradicted the sworn statements submitted by the defendants that Ryan has refused to discuss business with former Nobelpharma customers. While there is evidence that Nobelpharma USA customers have contacted Ryan, there is no evidence that Ryan has actively violated the covenant by soliciting Nobelpharma USA customers or attempting to take business away from Nobelpharma USA. On the contrary, it appears that Ryan has made efforts to abide by his obligations under the covenant. Compare Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. at 492 (risk of irreparable harm existed where defendant had solicited and conducted business with plaintiffs customers and encouraged one of plaintiffs former employees to join his new venture) with Optical Publishing Co., Inc. v. McCue, No. 83-0474 (D.Mass. 1984) (no showing of irreparable harm where plaintiff produced no evidence that it had lost advertisers since defendant began work for a competitor).
Furthermore, Nobelpharma USA has not shown that a negative covenant of this scope is reasonably necessary to protect its good will interest and therefore has not met its burden of showing a likelihood of success on the merits. The covenant would prevent Ryan from working for any competitor in the continental United States and would effectively deprive Ryan of his ability to earn a livelihood. A restrictive covenant of such breadth is not merited where the plaintiff fails to demonstrate a concrete threat of injury to its established business. See Richmond Bros., Inc. v. Westinghouse Broadcasting Co., Inc., 357 Mass. 106, 110 (1970); Folsom Funeral Service, Inc. v. Rodgers, 6 Mass.App.Ct. 843, 844 (1978).
Nobelpharma USA has not shown this court that the failure to issue the injunction would subject it to a substantial risk of irreparable harm nor has it demonstrated a likelihood of success on the merits.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Nobelpharma USA’s motion for a preliminary injunction be DENIED.