Brassard, J.
INTRODUCTION
Plaintiff, Caley & Whitmore (C&W), seeks a preliminary injunction, enjoining the defendants, Kevin J. Woodward (“Kevin Woodward”), Rita M. Woodward (“Rita Woodward"), David W. Griffith (“Griffith”), and Northeast Analytical Instrument Service and Calibration (“Northeast”), from engaging in any activities directly and indirectly related to the service and calibration of balances and precision scales within the New England area. As the basis for its request for injunctive relief, C&W contends that the defendants’ actions since leaving C&W violate a valid and enforceable non-competition agreement between the parties. For the following reasons, the plaintiffs motion for preliminary injunction is DENIED.
BACKGROUND
C&W provides expert laboratory instrument and equipment technical services throughout New England. These services include repair, maintenance and sales of balances, scales and other equipment. C&W employs Field Service Technicians who are dispatched to client facilities to service their equipment.
In its service and sales files, C&W retains records containing client contact names, direct line telephone numbers for client contacts, information relating to the charges each client pays, and client service agreements and service schedules.
New England Balance Service Inc. (“NEBS”) sells, calibrates, and services balances and precision scales. The founder and former president of NEBS is Ken Lucier (“Lucier”). On February 4, 1985, Lucier hired Kevin Woodward to work for NEBS as a service technician. NEBS provided Kevin Woodward with all his training in the field of balance and precision scale service and calibration. On December 24, 1986, Kevin Woodward signed an employment agreement that contained two clauses relevant to this motion. The first clause was a covenant not to compete in New England during the course of employment and for a term of five years after the termination of employment. The second clause was an agreement which stated, “. . . upon the completion of twelve (12) years of continuous employment and having rendered faithful and diligent service said Employee shall be entitled to the issuance of 24% of the outstanding stock of the Employer Corporation, without cost to said Employee.”
On February 4, 1997, Kevin Woodward believed that he was entitled to a 24% ownership interest in NEBS, pursuant to the clause in the employment agreement he signed on December 24, 1986. Before the sale of the assets of NEBS to C&W, Kevin Woodward had requested that NEBS issue to him 24% of the stock. NEBS failed or refused to transfer that 24% share of outstanding stock.
On March 21, 1997, NEBS sold all of its approximately 2400 accounts to C&W of which about 1200 were active at the time. As part of the sale, C&W purchased the right to solicit, and the information necessary to solicit, NEBS clients. C&Ws purchase also included the covenant not to compete in the employment agreement between Woodward and NEBS. Prior to the sale of its assets to C&W, NEBS employed three or four individuals. C&W offered employment to all of the NEBS employees. Kevin Woodward was the only NEBS employee who refused employment with C&W.
Northeast was founded by Rita M. Woodward, and employs Kevin Woodward. Northeast has a principal place of business in Pascoag, Rhode Island. Northeast is engaged in the business of servicing analytical and precision instrumentation, including balances and scales. Northeast’s business competes directly with the business of C&W, particularly with C&Ws New England Balance Service division. Northeast’s customer base includes former NEBS and C&W customers. C&W alleges that Kevin Woodward made use of NEBS’ service and sales files, containing customer information and service agreements, in order to take clients away from NEBS and C&W.
Griffith is a former employee of NEBS. He left NEBS over ten years ago and moved to Ohio where he started Lake Balance Company, Inc. (“Lake”). Lake also sells and services balances and scales.
At oral argument, counsel for the parties agreed that there are a number of companies in the business of scale and balance service and calibration in the New England area.
DISCUSSION
“The issuance of a preliminary injunction generally rests within the sound discretion of the judge, after a combined evaluation of the moving party’s likelihood of success on the merits, its claims of injury, and *196 finally a balancing of the competing harms to each parly." General Accident Ins. Co. of America v. Bank of New England-West N.A., 403 Mass. 473, 475 (1988) (citing Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 615 (1980). A preliminary injunction is a drastic remedy that the court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Wright & Miller, 11 Federal Practice and Procedure, §2948 (1973). If the moving party can demonstrate that an injunction is necessary to prevent irreparable harm to it and that granting an injunction poses no substantial risk of harm to the opposing party, a substantial possibility of success on the merits warrants issuing the injunction. Packaging Industries, 380 Mass. at 617 n. 12. This Court finds that plaintiff has failed to satisfy the requisite elements for a preliminary injunction.
C&W contends that Kevin Woodward’s employment with NEBS began on December 24, 1986 when the employment agreement was signed. Kevin Woodward contends that he was an employee as of the date that he was hired, February 4, 1985. In his affidavit, Griffith states that Woodward was an employee as of February 4, 1985, and was in no sense a probationary employee. If Woodward prevails on this issue, a material breach of the agreement by the employer, NEBS, would make the employment agreement unenforceable as to Kevin Woodward, particularly in light of the close connection between the non-competition provision and the transfer of stock provision in the contract. New England Canteen Services v. Ashley, 372 Mass. 671, 676 (1977); National Overall Dry Cleaning v. Yavner, 321 Mass. 434, 440 (1947).
Apart from the question of whether the employment agreement is not enforceable by C&W due to a breach by NEBS, this Court finds that there are no legitimate business interests for C&W to protect. New England Canteen Services, 372 Mass. at 674. There is nothing before the Court to indicate that trade secrets or confidential business information are being used by the defendants to further their own business. The information C&W contends is confidential is something a competitor could obtain simply by placing a telephone call to the prospective customer. C&W has also failed to establish that there are any trade secrets being used by the defendants to develop their own customer base.
Further, C&W’s allegation of irreparable harm fails because C&W itself has quantified the alleged harm sustained in its request for relief in the amount of $200,000 for lost accounts and profits. Foxboro Co. v. Arabian Oil Co., 805 F.2d 34, 36 (D.Mass. 1986).
ORDER
For the foregoing reasons, the plaintiffs motion for a preliminary injunction is DENIED.